STEPHEN W. RAWSON *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed April 17, 1900.*

1. PUBLIC IMPROVEMENTS—*in cities of over 25,000, board need not follow improvement petition.* In cities of over 25,000 inhabitants the board of local improvements may recommend an ordinance calling for a brick pavement though the property owners' petition is for a cedar-block pavement, since, under section 7 of the Improvement act of 1897, the board may originate or determine the character of an improvement whether a petition therefor is presented or not.

2. SAME—*when description of termini of improvement is not uncertain.* An ordinance for a pavement on a certain street from the "south line of the street railway right of way on West Harrison street to the north line of the street railway right of way on West Twelfth street" is not uncertain in its description of the termini, where the street car tracks are laid in such streets, and the ordinances under which they were laid, and which were introduced in evidence by the objectors, specify the width of the strip which the street railway company shall keep in repair.

APPEAL from the County Court of Cook county; the Hon. M. W. THOMPSON, Judge, presiding.

HOLDEN & BUZZELL, (WILLIAM H. HOLDEN, of counsel,) for appellants.

CHARLES M. WALKER, Corporation Counsel, and ARMAND F. TEEFY, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county, overruling objections to the confirmation of a special assessment and confirming said special assessment.

The appellants objected to the confirmation of the special assessment upon two grounds.

The first ground is, that the board of local improvements, by resolution adopted by them and by the terms

of the ordinance recommended by them, provided for the making of a brick pavement, instead of a cedar-block pavement as petitioned for by the property owners. The contention of the appellants is, that, inasmuch as the property owners presented to the board a petition for a cedar-block pavement, the board had no right to ignore their wishes and substitute a brick pavement for the one petitioned for.

The improvement, for which the special assessment in this case was levied, is the improvement of a street in the city of Chicago. The city of Chicago is a city of more than 25,000 inhabitants. Under section 7 of the act of June 14, 1897, "concerning local improvements," the board of local improvements in cities, having a population of more than 25,000, have the power to originate a scheme for any local improvement to be paid for by special assessment or special tax either with or without a petition. In *City of Bloomington* v. *Reeves*, 177 Ill. 161, this court said (p. 167): "We find no provision of the act which requires a petition signed by the owners of a majority of the property to be presented before the council can pass an ordinance for a local improvement in cities of a population of 25,000 or more. The requirement applies only to smaller cities. That clause of section 7, *supra*, which says the board may originate a scheme for any local improvement, either with or without a petition, evidently means that the board may originate a local improvement with a petition where one is required by the act, and without a petition where none is required."

In the case at bar, as we understand the record, the board of local improvements adopted a resolution describing the proposed improvement as being a pavement to be made with brick, and caused an assessment of the cost of the improvement to be made upon the basis of the construction of a brick pavement. Inasmuch as the board had the power to originate a scheme for the improvement, either with or without a petition, it was immaterial that a

petition was presented to the board requesting the pavement to be made of cedar blocks. Under the terms of section 7, the board seems to have the power to determine the character of the improvement, irrespective of any petition which may be presented to it by the property owners. It is only in cities having a population of less than 25,000 where the ordinance is required to be preceded by a petition of a majority of the property owners, etc. In *Whaples* v. *City of Waukegan*, 179 Ill. 310, we said (p. 313): "The provision of section 7, to the effect that the board shall have the power, with or without a petition, 'to originate a scheme for any local improvement,' has no potency to authorize the boards in cities and villages having a population of less than 25,000 to act in the absence of a petition, but only in such cities to originate a scheme for an improvement which it has by petition been asked to recommend to the city council."

Even in cases where such a petition is required to be filed, the petition need only indicate in general terms the improvement desired to be secured by the petitioners. The description of the improvement must be incorporated in the resolution adopted by the board, but it is only necessary that the petition should indicate in a general way the nature and locality of the improvement. (*Patterson* v. *City of Macomb*, 179 Ill. 163; *Whaples* v. *City of Waukegan, supra*). If it be true that the board can originate a scheme for a local improvement, either with or without a petition, in cities having a greater population than 25,000, and that that petition need only indicate in general terms the nature of the improvement, it necessarily follows that the board of local improvements may themselves select the character of the pavement to be laid down; and if, in their judgment, a brick pavement would better subserve the interests of the public and the property owners, they would have the right to recommend an ordinance providing for a brick pavement, instead of a cedar-block pavement. We are, therefore, of the opinion

that the objection to the confirmation of the assessment upon the first ground insisted upon by the objectors was not tenable.

In the second place, the confirmation of the assessment was objected to upon the alleged ground that the ordinance providing for the improvement was void on account of indefiniteness in not prescribing the nature, character, locality and description of the improvement.

The ordinance in question describes the improvement as follows: "That the roadway of South Western avenue from the south line of the street railway right of way on West Harrison street to the north line of the street railway right of way on West Twelfth street, said roadway being forty-four feet in width, and also the roadways of all intersecting streets and alleys extending from the curb line to the street line produced on each side of South Western avenue between said points, be and the same are hereby ordered improved as follows," etc.

The indefiniteness in description is alleged to consist in the bounding of the termini of the improvement by a "right of way" of the street railroad, when no right of way was granted to the street railroad company. It is claimed by appellants, that the street railroad company only had a license to lay and operate upon the streets railroad tracks, subject to the duty to keep a strip of the street, defined in width, but located, in repair. In other words, it is said that the alleged "right of way" of a street railroad in the public highway is not a boundary of the local improvement. It is conceded that the railroad company is required to keep in repair a certain strip of the street, which is definite in width. It was stipulated and agreed by the parties to this proceeding, that the street railroad tracks were laid and in use both upon West Harrison street and West Twelfth street. The ordinance, pertaining to street railways in those streets, granted permission "to lay down, maintain and operate a single or double track street railroad;" and provided that the

company "shall keep eight feet in width where a single track shall be laid, and sixteen feet in width where a double track shall be laid, in good condition and repair." The West Harrison street and the West Twelfth street ordinances were introduced in evidence by the objectors.

It may be true, that a street railroad has no absolute right of way in a street in the strict technical meaning of the term "right of way." But it is unnecessary to apply to the words, "right of way," as here used, the exact legal definition of a right of way. The limits to the right of passage by a street railroad company are the corporeal tracks laid in and upon the streets, upon which the cars of the company go and come. It would seem to follow, therefore, that the limits of this proposed improvement were fixed with sufficient definiteness in the ordinance by the use of the words, "from the south line of the street railway right of way on West Harrison street to the north line of the street railway right of way on West Twelfth street." Counsel for the appellants say, that the north line of the street railroad right of way may be the north rail, or the north line covered by the cars as they pass along, or the north line of the strip of land to be kept in repair by the company; and that, inasmuch as it may be either one of these three, the description is indefinite. We think it sufficiently appears, that the portion of the street to be paved is to begin on the south line of the strip of land in use by the street railway company on West Harrison street which is to be kept in repair by the company, and is to extend to the north line of the strip of land used by the company and to be kept in repair by it on West Twelfth street. As the street railway tracks are conceded to be already laid in the street, they constitute fixed boundaries which could be easily seen and acted upon by the contractors making bids for the work of paving the roadway.

We are, therefore, of the opinion that the ordinance in question is not void for indefiniteness, as is contended

by the appellants, and that, therefore, the county court committed no error in overruling the objection based upon that ground. Accordingly, the judgment of the county court is affirmed.                                *Judgment affirmed.*