THE PEOPLE *ex rel.* H. H. Whittock, County Treasurer, Appellant, *vs.* E. B. WILLISON *et al.* Appellees.

*Opinion filed December 15, 1908—Rehearing denied Feb. 5, 1909.*

1. SPECIAL TAXATION—*when description of locality of improvement is sufficient.* The description of locality contained in an improvement ordinance is certain if a competent surveyor can, from the ordinance and plats or maps which properly are a part of the legal records, determine such location.

2. SAME—*description of locality may be aided by physical monuments.* Physical monuments and the physical situation of the surrounding territory may aid and supplement a sidewalk ordinance in fixing the locality of the improvement, but they cannot be used to contradict the ordinance or public records.

3. SAME—*the term "public square" has a legal meaning.* The term "public square" has acquired a legal meaning, and indicates that certain property has been dedicated to the public use.

4. EVIDENCE—*width of traveled way may be proved to show extent of "public square."* Upon the question of the extent of a public square indicated on a plat by a blank space, it is competent to prove the width of the traveled way upon the four sides of the square, and that the inside of the square was a small park, containing trees and surrounded by hitching racks.

APPEAL from the County Court of Vermilion county; the Hon. ISAAC A. LOVE, Judge, presiding.

J. W. KEESLAR, State's Attorney, (REARICK & MEEKS, of counsel,) for appellant.

RAY F. BARNETT, and ACTON & ACTON, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the county court of Vermilion county refusing judgment, on the application of the county collector, for five delinquent special assessments, (against five different owners, apparently consolidated into one case,) amounting to $175.34, for sidewalks, levied under the act of 1875 (Hurd's Stat. 1908, p. 366,) by the village of Indianola, in said county.

In March, 1907, an ordinance was passed by said village which provided that the public square, on the four sides thereof, "be improved by the construction of concrete walks thereon in front of the lots, tracts and parcels of land abutting thereon, in manner and form as hereinafter set forth, which sidewalks are hereby declared to be a local improvement, and that the entire cost thereof shall be paid by a special taxation of the lots, blocks and parcels of land abutting on said street along the line of said improvement, in proportion to frontage. * * * The inside line of the walk shall be laid to grade and within approximately one foot of the property line. The walks shall have a slope toward the street of one-fourth an inch to the foot." On the hearing a plat of the original town (then called Chillicothe) made in 1836 was introduced, which showed a blank or unplatted space in the center of the village but nothing to indicate for what purpose this space was left unplatted. The following is a copy of the central part of the plat of Chillicothe, as shown in the record, and the words which are in or at the edge of the vacant space are in the same relative position on this plat as shown in the plat in the record. The words toward the edge of the plat here shown, particularly "Walnut" and "Vermilion," are nearer the center than

they are on the original plat, and the outlying blocks on the original plat, which do not affect the question at issue, are here omitted:

The sole question on this hearing is whether the ordinance in question, taken in connection with the plat, sufficiently indicated the locality of the sidewalk, the argument of the objectors being, that it is a fair inference from this plat that the four streets in question extend across the unplatted space, and that therefore the public square proper is bounded on the four sides by these four streets, and in order to have the sidewalk built on the four sides of the public square it must be constructed on the side of the street, in each case, nearest the center of the square; that it could not be on the public square and be constructed approximately within one foot of the lot lines, as the ordinance pro-

vides, and that therefore the ordinance is so uncertain and indefinite as to the locality of the improvement that it does not authorize its construction. A stipulation in the record shows that the sidewalks in question have been actually constructed in front of and approximately one foot from the lot lines. No question is raised in this proceeding as to the ordinance being sufficient to authorize the construction of the improvement in all other particulars.

It is essential to the validity of a special tax that the ordinance providing for the proposed local improvement should not only provide for the nature, character and description of such improvement, but its locality as well. (*City of Carlinville* v. *McClure,* 156 Ill. 492.) A substantial compliance with the law, however, is sufficient. (*People* v. *Burke,* 206 Ill. 358; *People* v. *Patton,* 223 id. 379.) Section 2 of the Sidewalk act provides that the ordinance "shall define the location" "with reasonable certainty," and "shall prescribe its width, the materials," etc. Manifestly, under this wording no more certainty is required as to location than is required in the other particulars to be provided for in the ordinance. We have held that the description of the locality in an ordinance is sufficient if a competent surveyor could by it fix the locality of the improvement. (*Lamm* v. *City of Danville,* 221 Ill. 119; *Village of Auburn* v. *Goodwin,* 128 id. 57.) Necessarily, the surveyor must not only look to the ordinance, but to any plats or maps which are properly a part of the legal records, in order to determine the locality of the local improvement. Has he a right to take into consideration any of the fixed monuments, such as buildings, sidewalks, etc., or the physical situation of the public grounds or streets in the neighborhood of the improvement, to assist in fixing its location?

It is not necessary for an ordinance to state the width of the street to be paved in order to allow the proper estimate of the cost to be made when the width of the street may be easily ascertained from the surroundings. An ordi-

nance requiring the pavement of a street will not be con-
strued to require the improvement of an existing sidewalk.
(*County of Adams* v. *City of Quincy,* 130 Ill. 566; *People*
v. *Markley,* 166 id. 48; *Woods* v. *City of Chicago,* 135 id.
582.)   The location of thirty-six feet of pavement in a
street may be made certain by testimony as to the width of
the street and sidewalk space.   (*Chicago, Burlington and
Quincy Railroad Co.* v. *City of Quincy,* 136 Ill. 563; *Har-
rison Bros.* v. *City of Chicago,* 163 id. 129.)   The width
of the pavement need not appear in the ordinance.   The
width of the street is as fixed and permanent and as well
known as the existence of the street itself.   (*Dickey* v. *City
of Chicago,* 164 Ill. 37.)   This last case discussed and dis-
tinguished *Gage* v. *City of Chicago,* 143 Ill. 157, wherein
it was proved that the paving was to be done upon a prairie,
where there were no houses on the line of the street pro-
posed to be improved and no sidewalk line established by
the ordinance.   The city contended that the roadway was to
be thirty feet in width, while it was shown that the com-
missioners had estimated a street forty feet in width. It was
held that the ordinance was invalid for indefiniteness.   The
termini of a pavement are sufficiently described as street
railway rights of way, the limits to such rights of way, un-
der the ordinance in question, being held to be the tracks.
(*Rawson* v. *City of Chicago,* 185 Ill. 87.)   The height of
man-holes under a sewer ordinance can be determined by
the difference in elevation between the sewer and the sur-
face of the ground.   (*Bickerdike* v. *City of Chicago,* 185
Ill. 280.)   The width of the wings to be paved in a local
improvement need not appear in the ordinance, as this is a
matter of easy ascertainment.   (*Givins* v. *City of Chicago,*
188 Ill. 348; *Houston* v. *City of Chicago,* 191 id. 559;
*Topliff* v. *City of Chicago,* 196 id. 215.)   An ordinance for
a fourteen-foot sidewalk from the lot line to the curb, where
the space on account of a building being slightly over the
line was only thirteen feet, was held not void, as the person

estimating the cost, as well as the bidder, could see what was to be done and would be presumed to act upon the rule that the curb line would control. (*Hyman* v. *City of Chicago,* 188 Ill. 462.) An ordinance for paving need not state, in detail, where filling is necessary or where the foundation must be compacted, as it would be perfectly apparent to a contractor or engineer where such filling was necessary to bring the foundation up to sub-grade and where it ought to be compacted. (*Gage* v. *City of Chicago,* 203 Ill. 26.) It is a valid objection, on confirmation of a sewer assessment, that a street named did not exist, the land having been in the objector's exclusive possession for over forty years. (*Dempster* v. *City of Chicago,* 175 Ill. 278.) Extrinsic evidence cannot be offered to show that a street is commonly known by a certain name where another name has been fixed in accordance with the law, as shown by the plat of the city. *Lamm* v. *City of Danville, supra.*

Under these authorities we think that physical monuments and the physical situation of the surrounding territory may aid and supplement the ordinance in fixing the locality of a local improvement, but that such fixed monuments or physical surroundings cannot be used to contradict the ordinance or public records. As we have seen, there is nothing in the ordinance or in the platting of the town that positively names the unplatted space as a public square. We think, however, that the name "public square" has acquired a legal meaning, indicating that certain property has been dedicated to the public use. (*Guttery* v. *Glenn,* 201 Ill. 275.) The public square of a county is of a public nature and held for governmental purposes. (*Lowe* v. *Howard County Comrs.* 94 Ind. 553.) While there is nothing written on this plat in question to indicate with certainty that it was intended to be dedicated as a public square, we think that is a fair inference from the plat. This court has held that in their ordinary acceptance the words "public square" will be understood to be the platted

ground devoted to public purposes, and not the territory of the streets adjoining the sides of the public square, (*County of DeWitt* v. *City of Clinton*, 194 Ill. 521,) but we stated in that decision that if the streets surrounding a plat of ground on which the court house was located should be marked and designated on said plat as the "public square," such designation might be a sufficiently definite description of such territory occupied by the streets. The highest degree of accuracy is not always attained or to be expected in the framing of statutes or city ordinances. If such accuracy in the use of language was applied by the courts in construing ordinances, the purposes for which many of them are passed would doubtless be defeated. As was said in *City of Springfield* v. *Green*, 120 Ill. 269, on page 275: "Whenever the meaning of a word, as used in a statute or ordinance, becomes the subject of controversy in a legal proceeding, the ascertainment of its strict primary signification is not a matter of so much importance as it is to discover the sense in which it was used by the legislative body, for the latter must control, although the word has been used without proper regard to its appropriate and primary meaning."

While, under the authority of *Guttery* v. *Glenn, supra,* we would be inclined to hold from this plat that the streets were intended to extend and run along the four sides of the public square, yet it is also quite plain that in that decision the words "public square" were used not only to designate the property inside of the inner boundary line of the four streets in question, but also to include the streets as well. It is very evident, however, from the connection in which the words "public square" were there used, what meaning, in each instance, was intended to be conveyed. The ordinance here provides that the sidewalks shall be in front of the lots "abutting thereon," plainly meaning, from the connection, abutting on the "public square." Further along it is said that the lots "abutting on said street along the line

of the improvement" shall pay for the assessment. Manifestly, the same lots are referred to in one clause as abutting on the public square and in the other as abutting on the street. The word "abutting" means joined to or adjoining but does not necessarily imply that the things spoken of are in contact. (*Richards* v. *City of Cincinnati,* 31 Ohio St. 506.) This court has held in *City of Springfield* v. *Green, supra,* that a lot the side of which bounded on a street to be paved was to be regarded as abutting upon the same as well as a lot one end of which was so bounded by the street, but that lots are not abutting upon a street which do not border upon the street in question. In order to find the meaning of this ordinance as to the location of the improvement all parts of it must be considered together. (*Northwestern University* v. *Village of Wilmette,* 230 Ill. 80; *McChesney* v. *City of Chicago,* 173 id. 75.) Following this rule, in *Steele* v. *Village of River Forest,* 141 Ill. 302, it was held that the use of the word "fall" should be construed to mean "rise," in order to prevent an absurd consequence.

We hold that the ordinance is not invalid because of the uncertainty of the location of the improvement therein, and that, properly construed, it required the sidewalks in question to be constructed as they were in front of the lots and approximately one foot from the property line.

While the conclusions we have reached make it unnecessary to decide further on the admission of evidence, we are disposed to hold that the evidence offered by appellees to prove the width of the traveled way on the four sides of the square in question, and that the inside thereof was a small park, approximately eight rods square, containing trees and a band-stand and surrounded by hitching racks, should have been admitted.

The judgment of the county court will be reversed and the cause remanded to that court, with directions to overrule the objections and enter judgment.

*Reversed and remanded, with directions.*