# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE CITY OF LINCOLN, Appellee, *vs.* THE CHICAGO AND
ALTON RAILROAD COMPANY, Appellant.·

*Opinion filed February 21, 1914.*

1. SPECIAL ASSESSMENTS—*when exclusion of street railway right
of way is proper.* Where a street railway is occupying a portion
of a street with its tracks under an ordinance granting it such
privilege and requiring the company to pave such portion of the
street at the time and in the manner in which the remaining portion
of the street is paved by the city, it is proper to exclude the street
railway company's portion of the street from the terms of the pav-
ing ordinance.

2. SAME—*what does not show that street railway ordinance is
fraudulent.* It is for a city to say whether the paving by a street
railway company of the portion of the street occupied by its tracks
shall be equivalent to an assessment of benefits against the property
of the company for paving the whole roadway of the street, and
the fact that the cost of the paving to be done by the company may
be less than the benefits that might be assessed does not render
fraudulent an agreement by the city to accept the paving by the
company as the equivalent of an assessment.

3. SAME—*when a paving ordinance sufficiently describes width
of strip exempted.* A paving ordinance exempting from the im-
provement "the space between the rails, and for. a distance of one
foot outside the rails, of the track of the Springfield and North-
eastern Traction Company," etc., sufficiently describes the width of
the portion of the street to be exempted, as the physical situation

of the surrounding territory may supplement and aid the description in the ordinance.

4. SAME—*objection to defects in a publication notice must be made under special appearance.* An objection that the publication notice in a special assessment proceeding was defective must be made under a special appearance, as such defects are waived where general objections are filed going to the merits of the case.

5. SAME—*property of railroad corporation may, if benefited, be specially assessed.* In Illinois the property of a railroad corporation, even though being used for railroad purposes, may, if benefited, be specially assessed to pay for a local improvement.

6. SAME—*when measure of benefit is the increased value for the restricted use of property.* Where property is restricted by statute or grant to a particular use and cannot be legally applied to any other use and is at the time of the improvement devoted to the restricted use, the true measure of benefit to such property from the improvement is the increased value thereof for the restricted use, there being no proof tending to show that any change of such use is intended or probable.

7. SAME—*measure of benefit to land owned by a railroad company but not devoted to railroad purposes.* Where land owned by a railroad company is not devoted to railroad purposes but to ordinary business uses, the measure of benefit to such land from a local improvement is the enhanced market value of the property for any purpose by reason of the construction of the improvement, notwithstanding the grant to the company restricts the use of the land to railroad purposes.

8. SAME—*when measure of benefits to railroad property 'is the enhanced market value for any purpose.* Strips of ground owned by a railroad company and lying between its right of way and the street to be paved, the strip in one block being leased for a lumber yard and in another block being used, by permission of the company, for a small park, may be specially assessed for the paving improvement, and the measure of benefit is the enhanced market value of such strips for any purpose, by reason of the construction of the improvement.

9. SAME—*measure of benefit to lands used solely for right of way and depot purposes.* The measure of benefit from a street paving improvement to land owned by a railroad company and used solely for right of way and depot purposes is the enhanced value of the property for the particular use to which it is devoted, by reason of the construction of the improvement.

10. SAME—*when an instruction as to considering future use of property is erroneous.* Where part of the property of a railroad

company specially assessed for a paving improvement consists of land used exclusively for right of way and depot purposes, it is error to instruct the jury that they shall consider, on the question of benefits, whether or not the market value of such property for any legitimate purpose for which the same may be used will be increased by reason of the construction of the proposed improvement.

11. SAME—*when an instruction and form of verdict should be given.* In a proceeding to confirm a special assessment against the property of a railroad company for paving a street, where the evidence varies as to the amount of such benefits, some witnesses testifying that it was more and others less than the assessment, an instruction and form of verdict requested by the company should be given, stating that if the jury believed, from the evidence, the property was not benefited to the amount of the assessment they should find the amount it was benefited.

12. SAME—*when fact that a strip of land is used for park purposes does not preclude its assessment.* The fact that a strip of ground owned by a railroad company, adjoining its right of way, has been planted with trees, and is being used, with the consent of the company, for a small park, does not preclude its assessment for a street paving improvement, where there is nothing to show that the company cannot change the use, at any time, to business or railroad purposes.

13. SAME—*what element of benefit is too remote and conjectural.* Whether the leaving of a strip of land owned by a railroad company and lying between its right of way and the street, without buildings, would be a benefit to the company by lessening the danger of accidents at cross-streets is too remote and conjectural an element of benefit to be considered.

14. SAME—*question of relative benefits to different property is a question for the court and not the jury.* The only questions for the jury in a special assessment proceeding are whether the property is assessed more or less than it will be benefited and whether it is assessed more or less than its proportionate share of the cost of the improvement, and the jury is not authorized to hear evidence as to the relative benefits to the property on the opposite sides of the street.

15. SAME—*a witness should not be allowed to give an opinion whether benefit equals assessment.* A witness may testify as to the amount which property is benefited by the proposed improvement, but he should not be allowed to give an opinion as to whether the property is benefited the amount of the assessment, as that is the ultimate question for the jury to determine.

APPEAL from the County Court of Logan county; the Hon. CHARLES J. GEHLBACH, Judge, presiding.

W. A. COVEY, (SILAS H. STRAWN, of counsel,) for appellant.

URI KISSINGER, City Attorney, (HUMPHREY & ANDERSON, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a proceeding brought by the city of Lincoln in the county court of Logan county in March, 1913, to levy a special assessment for paving with brick Chicago street, in that city, between Clinton and Pekin streets,—about three blocks. Legal objections were filed by appellant and overruled. Trial was then had before a jury on the question of benefits, and judgment was entered on the verdict confirming the assessment. This appeal followed.

The main line of the appellant company passes through the city of Lincoln in a north-easterly direction, just westerly of the proposed improvement. The property of appellant assessed is the 100-foot right of way proper of said railway adjacent to the three blocks and a strip of land 80 feet in width, being all the land between said right of way and the street improvement in question. The 80-foot strip, as well as the right of way, is crossed by streets, dividing said strip into three blocks. The 80-foot strip on the southerly block is now used, and appears to have been for years past, for a lumber yard, being leased for that purpose by the railroad company. The strip in the next or middle block is covered with trees planted years ago by permission (not written) of said company and appears to have been used for a long time by the public as a park. The 80-foot strip in the northerly block is used as the depot and depot grounds of the company, a new building having been erected thereon within the last two or three

years. Previous to that the depot was located on the west-
erly side of the tracks, and the 80-foot strip in that block
was used at one time partially for a grain office and during
another period an elevator building stood on a part of it.
This strip of land, including the right of way, was pur-
chased in 1853 by the predecessor of appellant from Robert
B. Latham and wife, subject to the provision "to use the
herein granted land for railroad purposes only." The esti-
mated cost of the proposed improvement for a brick pave-
ment was $8649, of which $1353 was assessed against the
public for public benefits and the balance divided equally,
one-half to the property adjacent on the easterly side of
the improvement and the other half to said 100-foot right
of way and said 80-foot strip for the said three blocks,
making appellant's assessment $3648. The property lying
on the easterly side of said improvement is owned by pri-
vate individuals and appears to be occupied for most of
the distance by buildings used for business purposes, while
along the center of said street are the tracks of the Spring-
field and Northeastern Traction Company, an electric in-
terurban railroad. On Broadway street where it crosses
Chicago street there is another street car line, owned by
the Lincoln Railway and Light Company, occupying the
center of Broadway street and crossing this improvement.
Both of these latter companies, when given the right to lay
their tracks in said streets by the city of Lincoln by ordi-
nances, agreed that they would keep the streets on which
their tracks were laid in repair and pave the portions of
the streets occupied by them at their own expense, with
similar paving, whenever the city required the paving of
such streets. The proposed improvement ordinance only re-
quires the paving with brick of that portion of the street
not occupied by the tracks of said street railway companies,
and neither of said companies is assessed in this proceeding.

Counsel for appellant insist that the evidence on this
record shows that the properties of said electric railway

companies within the limits of said improvement were bene-
fited far more than the cost of paving the right of way of
said companies, and that they should have been assessed in
this proceeding the amount of said additional benefit.    Un-
der substantially similar provisions of franchise ordinances
the burden imposed upon a street railway to pave the por-
tion of the street covered by it has been held as equivalent
to an assessment for paving the street, the courts holding
that whether a street railway company should pay for pav-
ing between its tracks, or less or more, rests in the sound
discretion of the municipal authorities; that when the privi-
lege to use a public street is granted by a franchise ordi-
nance and the ordinance is accepted and acted upon, such
ordinance becomes a binding contract between the munici-
pality and the street railway company and cannot be re-
voked by either party. · (*Billings* v. *City of Chicago,* 167
Ill. 337; *West Chicago Street Railroad Co.* v. *City of Chi-
cago,* 178 id. 339; *Village of Madison* v. *Alton, Granite
and St. Louis Traction Co.* 235 id. 346; *City of Lincoln* v.
*Harts,* 250 id. 273, and cases therein cited.)    Counsel con-
cede that this is the rule laid down in those decisions, but
earnestly insist that the law in those cases on this point has
not been accurately stated.    In support of their argument
they cite *City of Chicago* v. *Baer,* 41 Ill. 306, *Parmelee*
v. *City of Chicago,* 60 id. 267, *Cicero and Proviso Street
Railway Co.* v. *City of Chicago,* 176 id. 501, and *Spring
Creek Drainage District* v. *Elgin, Joliet and Eastern Railway
Co.* 249 id. 260.    In these last two cases the local improve-
ments were for drainage, and there were no provisions in
the franchise ordinances affecting the assessments for that
purpose.    The principles laid down in the first case cited,
so far as relied on in this argument, were, in effect, over-
ruled by the United States Supreme Court in *City of Chi-
cago* v. *Sheldon,* 9 Wall. 50, where it was held that a fran-
chise ordinance similar to the one here in question, with
stipulations fixing the proportion of the local improvement

to be paid for by the company, amounted to a contract between the municipal authorities and the street railway company. That holding, where the same or similar questions have been involved, has always been followed by this court, as will be seen by an examination of the authorities heretofore cited, on the ground that the public authorities may commute a tax or special assessment for what they may hold to be its fair equivalent. (See, also, on this question, *State* v. *Illinois Central Railroad Co.* 246 Ill. 188, and cases cited on page 206.) This court held in *Village of Madison* v. *Alton, Granite and St. Louis Traction Co. supra,* that even though, in passing such franchise ordinance and making the contract, the municipal authorities had acted improvidently and afterwards became dissatisfied with the contract thus made, such a situation could not affect the validity of the contract. Counsel for appellant argue, at least inferentially, that these franchise ordinances are so inequitable and unjust as to be fraudulent, and therefore void. Such an ordinance is not fraudulent merely because it may turn out to be improvident or inequitable, if the public authorities have acted from proper motives. Proof of fraud must be clear and convincing to warrant interference by the courts in matters of taxation. (*Sanitary District* v. *Gifford,* 257 Ill. 424, and cases cited.) We see no reason to depart from our former rulings on this question. This objection was therefore properly overruled.

The appellant further insists that the ordinance did not definitely describe the improvement, in not stating in feet and inches the width of the strip of ground in the center thereof occupied by the right of way of the interurban railroad. The wording of the ordinance on this point is as follows: "Excluding from said roadway of Chicago street the space between the rails, and for a distance of one foot outside the rails, of the track of the Springfield and Northeastern Traction Company," etc. It needs no citation of authorities to prove that the ordinance must specify the

262 — 2

nature, character and description of the improvement with such certainty that the property owners and the public may know what the improvement is to be, but the physical situation of the surrounding territory may aid and supplement the description in the ordinance in locating the improvement. In *Pearce* v. *Village of Hyde Park,* 126 Ill. 287, the court held that a reference might be made to other improvements in the village to determine the details of a sewer ordinance. In *Rawson* v. *City of Chicago,* 185 Ill. 87, there was a similar objection that the ordinance was indefinite in bounding the termini of the proposed improvement by a "right of way of a street railroad" when no right of way was granted to said railroad. The court there held the description of the improvement in the ordinance sufficient when considered in connection with the actual boundary of the so-called right of way of the street railway. In *People* v. *Willison,* 237 Ill. 584, there was a question as to the location of a sidewalk. The authorities were reviewed, and it was held that physical monuments and the physical situation of the surrounding territory could be used to make plain the meaning of the ordinance but not to contradict it. The wording of the ordinance here in question seems to be identical with that of the local improvement ordinance in *Village of Madison* v. *Alton, Granite and St. Louis Traction Co. supra.* While it is true this point was not specifically passed upon in that case, it is evident that the court considered the description in that ordinance sufficient.

The appellant further insists that the publication notices were defective. This objection could only be raised by special appearance. Having filed general objections to the merits, the defects in the notice, if any, were waived. *Nicholes* v. *People,* 165 Ill. 502; *Porter* v. *City of Chicago,* 176 id. 605; *Sny Island Drainage District* v. *Shaw,* 252 id. 142.

Counsel for the appellant insist that the evidence on the question of benefits, on the hearing before the jury, should have been restricted to the market value of the property

limited to railroad purposes, while counsel for the appellee argue that the measure of benefits for this improvement was the enhanced value of the property by reason of the pavement for any purpose for which the property could be used, without regard to its being restricted to railroad purposes. Cases have arisen in this and other jurisdictions in which the improvement would confer a special benefit upon the property assessed if it were used for ordinary purposes but when used for the special and peculiar purpose the improvement conferred no special benefit upon the property while devoted to such special use. There is a conflict of authority whether on that state of facts the property can be assessed. (1 Page & Jones on Taxation by Assessment, secs. 578, 595-598, and cases cited.) The question thus presented here is whether the property is to be considered benefited on the theory that it may be used for any purpose, or not benefited on the theory that the present actual use should control. No definite controlling rule can be laid down. Land which is owned by the public and used only for public purposes may be said to be devoted to that use and held not subject to assessment. If the land is owned by a private person or a private corporation and devoted to private use, the general rule is that the right to assess such land is not restricted by the fact of a special or peculiar use, the peculiar use being merely voluntary, which the owner may change at his pleasure and thus obtain the benefit accruing from the improvement. If the use of the property is a *quasi* public one and circumstances appearing on the trial are such as to make it probable that such use will be permanent, it is held by some authorities that such property should not be assessed, or, at least, only for a nominal amount. (1 Page & Jones on Taxation by Assessment, sec. 578, and cases cited.)

In this State it is the settled rule that the property of a railroad corporation, even though used for railroad purposes, if benefited, may be assessed for a local improvement.

(*Illinois Central Railroad Co.* v. *City of Decatur,* 126 Ill. 92; *Chicago, Rock Island and Pacific Railway Co.* v. *City of Moline,* 158 id. 64; *Illinois Central Railroad Co.* v. *City of Kankakee,* 164 id. 608; *Chicago and Northwestern Railway Co.* v. *Village of Elmhurst,* 165 id. 148; *City of Kankakee* v. *Illinois Central Railroad Co.* 257 id. 298.) Where the property is restricted by statute or grant to a particular use and cannot be legally applied to any other use, and is at the time of the improvement devoted to such particular use, the true measure of the benefit which the improvement will confer is the increased value for the restricted use, in the absence of proof reasonably tending to show that the property in question, having regard to present conditions and the existing business and wants of the public, is about to be devoted to other uses. (*Illinois Central Railroad Co.* v. *City of Chicago,* 141 Ill. 509; *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago,* 149 id. 457; *Chicago Union Traction Co.* v. *City of Chicago,* 202 id. 576; *Illinois Central Railroad Co.* v. *City of Kankakee, supra.*) The measure of benefits to city lots owned by a street railway company, not used for railroad but for other purposes, is the enhanced value of the property for any purpose by reason of the construction of the improvement, notwithstanding under the grant the use is restricted to railroad purposes. (*Chicago Union Traction Co.* v. *City of Chicago,* 204 Ill. 363; 207 id. 607; 215 id. 410.) If the railroad company has acquired real estate and is devoting the same purely to business purposes, the same as an ordinary private individual, no doubt it may be required, on the application of the proper State officials, to sell and dispose of the same, but such property, while so used for ordinary business purposes, may be assessed, if benefited, for a local improvement the same as if owned by a private individual. (*Chicago Union Traction Co.* v. *City of Chicago,* 202 Ill. *supra,* p. 583; *Sanitary District* v. *City of Joliet,* 189 id. 270.) That being so, the question whether the provision

in the deed of conveyance to the railroad company granting the land only for railroad purposes is à condition or a covenant is unimportant in this proceeding and need not be decided.

This court had under consideration a question somewhat similar to the one here presented, in *Village of River Forest* v. *Chicago and Northwestern Railway Co.* 197 Ill. 344, and reviewed the authorities at considerable length. It was there stated that circumstances may arise under which a railroad right of way used only for that purpose can be said to be benefited by local improvement but that as a general rule it cannot be, quoting with approval from *Illinois Central Railroad Co.* v. *City of Chicago, supra,* where it was said: "Where land is restricted by statute to a particular use and cannot be applied to any other, the true measure of benefit which an improvement will confer on the land is its increased value for the special use to which it may by statute be restricted." The opinion further stated (p. 347): "The question, then, here must be, in the absence of proof tending to show that the property in question is devoted to other than right of way purposes or is about to be so devoted, will it, for the purposes of right of way for the two tracks of appellee, be benefited by the improvement of the street upon which it borders? It must be borne in mind that railroad right of way cannot be put upon the market by a railroad company for general business purposes, as can private property."

In *Illinois Central Railroad Co.* v. *City of Chicago,* 169 Ill. 329, the court said (p. 338): "The present and not the probable future use of the land * * * is the test of market value to be shown by the evidence." Again (p. 339): "In this case the right of way, as such, is devoted to a special use and has no market value,"—that is, no market value in the ordinary use of that term. See, also, *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston*

*Railroad Co.* 112 Ill. 589; *Ligare* v. *Chicago, Madison and Northern Railroad Co.* 166 id. 249.

Considering the special facts involved in each case decided by this court bearing on this question, we see no conflict, as contended by counsel for appellee, in the rules of law laid down in the various decisions. Under these rules it is clear that any evidence as to benefits that might be taken concerning the 100-foot strip of right of way included in the assessment should be restricted to the special and peculiar use for which the property was thus devoted. This same rule ought to apply, with some limitations, to the 80-foot strip used for depot purposes. The 80-foot strip used for park purposes and for a lumber yard should, in our judgment, be controlled by the rules laid down in the four cases heretofore cited of *Chicago Union Traction Co.* v. *City of Chicago, supra.* Aside from the 100-foot strip used solely for right of way, the property here assessed is very similar to the property assessed in *Chicago Terminal Transfer Co.* v. *City of Chicago,* 178 Ill. 429. It was there held that property used partly for depot grounds and the remainder leased to private parties might be assessed in proportion to the benefits received from the paving of the street on which it bordered, that being the main street used by passengers in going to and from the depot.

Under the authorities, without question, it was proper to admit evidence to the jury showing that the property of appellant assessed was benefited. The evidence, however, as to the benefits to the different pieces of property should have been limited in accordance with the principles and rules of law heretofore stated.

On behalf of the city the court gave an instruction "that it makes no difference in this case whether or not such property assessed is used at present for such purpose that it will not be specially benefited by the proposed improvement or is put to any use to which the market value of the same is unimportant, and in determining your ver-

dict you may take into consideration the present use to which said property is put, and you shall consider whether or not the market value of said property for any legitimate purpose for which the same may be used will be increased by reason of the construction of the proposed improvement." The property of the railroad company, as we have stated, was assessed as one piece, including the 100-foot right of way and the 80-foot strip. There can be no reasonable ground for arguing that the 100-foot right of way is liable to be devoted to other use during the life of the proposed improvement. Under the law it is manifest that the future use of this part of the assessed property must be the same as the present use so long as appellant continues to operate its railroad, unless the legislature should permit it to change its route. The same may. practically be said as to the part of the 80-foot strip now used for depot purposes. The instruction was manifestly erroneous so far as it applied to the 100-foot strip or the part of the 80-foot strip used for depot grounds. We are disposed to think it was liable to mislead the jury, under the evidence in this case, as to the 80-foot strip on the other two blocks. It is true it was approved by this court in *Thomas* v. *City of Chicago*, 152 Ill. 292, but in that case the assessment was of ordinary property used only for private purposes.

Appellant asked the court to give an instruction and form of verdict stating that if the jury believed, from the evidence, that the property was not benefited the amount of the assessment they should find what it was benefited. The evidence varied as to the amount that appellant's property was benefited, some witnesses testifying that it was benefited more and some less than the assessment. In this state of the record the court erred in not giving the instruction and form of verdict asked.

Appellant insists the city could not levy a special assessment against the 80-foot strip of land used solely for

park purposes, under the holdings of this court in *Billings* v. *City of Chicago, supra,* and *City of Chicago* v. *Carpenter,* 201 Ill. 402. In those cases the city of Chicago endeavored to levy an assessment against property which was under the jurisdiction of the park authorities, and they are not in point here. There is nothing shown in this record that would prevent appellant from changing the use of this strip now used for park purposes to business or railroad purposes. This strip of land, so far as the park question is concerned, is in the same situation on the question of benefits as it would be if it were owned by a private individual as a part of his private grounds, which he had permitted to be used for park purposes by the public without charge.

The court permitted counsel to ask one of the witnesses for the city whether the leaving of this 80-foot strip without buildings would not be a benefit to the Chicago and Alton Railroad Company by reason of its location through the center of Lincoln, thereby lessening the danger of accident in crossing the railroad. The witness answered, over objection, "Well, I suppose if there were buildings there that the danger at the crossings would be greater than it would be in the open, as it is now." The benefit to be conferred on the property by the construction of the improvement must be an actual, real benefit, and not one arising on conjecture. Nothing should be allowed for imaginative or speculative benefits, or such remote or inappreciable benefits as the imagination can conjure up, which may or may not occur in the future. (*Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago, supra; Village of River Forest* v. *Chicago and Northwestern Railway Co. supra; Rich* v. *City of Chicago,* 152 Ill. 18; *Gordon* v. *City of Chicago,* 201 id. 623.) Such a benefit as here attempted to be shown was too remote and conjectural to be considered by the jury. This evidence should not have been admitted.

Counsel for the city were also permitted to ask, and have answered, the question whether the property .on the easterly and westerly sides of Chicago street, against which benefits had been assessed, was equally benefited, and if not, in what proportion, relatively speaking, the two parts were benefited.  The only questions to be determined by the jury are, first, is the property assessed more or less than it will be benefited? and second, is it assessed more than its proportionate share of the cost of the entire improvement?  (*Wells* v. *City of Chicago*, 202 Ill. 448; *Doran* v. *City of Murphysboro*, 225 id. 514; *Northwestern University* v. *Village of Wilmette*, 230 id. 80; *City of East St. Louis* v. *Illinois Central Railroad Co*. 238 id. 296.) The jury were not authorized to hear evidence as to the relative benefits of any two pieces of property assessed for the improvement.  That is a question for the court, under proper legal objections.  (*Mercy Hospital* v. *City of Chicago*, 187 Ill. 400; *Jones* v. *Town of Lake View*, 151 id. 663.)  This evidence, therefore, comparing the relative benefits of the property on the westerly side with that on the easterly side, was improperly admitted.

Several witnesses for the city were asked whether or not the property of appellant would be benefited the amount of the assessment.  In some cases the question was objected to and in others the objection was not properly made. The objection, when made, should have been sustained. Whether the property was assessed the amount of the benefit was the ultimate fact to be determined by the jury.  This very objection was before this court in *City of Kankakee* v. *Illinois Central Railroad Co*. 258 Ill. 368, and the court there concluded its discussion by saying (p. 374) : "Witnesses could properly be called upon to give an opinion as to the amount that the property was benefited but not to determine the whole issue."  Witnesses cannot give an opinion as to an ultimate fact.  *Keefe* v. *Armour & Co*. 258 Ill.

28; *Lyons* v. *Chicago City Railway Co.* id. 75; *Yarber* v. *Chicago and Alton Railway Co.* 235 id. 589.

The judgment of the county court will be reversed and the cause remanded to that court for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*