SUMMIT COUNTY HISTORICAL SOCIETY ET AL., APPELLANTS, *v.* CITY OF AKRON ET AL., APPELLEES.[*]

(No. 5089—Decided March 29, 1961.)

*Mr. Charles F. Schnee* and *Mr. Robert L. Culbertson*, for appellants.

*Mr. Harry N. Van Berg*, director of law, and *Mr. Sal Germano*, for appellees.

HUNSICKER, J. On December 6, 1825, Paul Williams and Simon Perkins placed of record the "Map of the Town Plat of Akron. In Portage County, Ohio. Laid out on the Canal at the Portage Summit."

[*]Motion to certify the record overruled (37060), July 5, 1961.

On March 12, 1836, Akron became an incorporated municipality. In 1840, the area embracing Akron was established as Summit County.

This plat of Akron covered both sides of the Ohio Canal, then being constructed. On the west side of the canal, an area 5 links square, bounded by streets, was designated on the plat as "Public Square"; south of this public square was land designated on the plat as "Public Buildings." Along the canal the plat showed some land designated "Public Grounds."

The public square, now designated by action of the council of the city of Akron as Perkins Square Park, remained an open area with trees, grass and public walks until in November, 1959, when, at the direction of the administration of the city of Akron, a portion of Perkins Square Park was prepared for the erection thereon of an outdoor skating rink, to be opened to all the citizens of Akron upon the payment of a small fee.

The Summit County Historical Society and two citizens of Akron then brought an action in the Common Pleas Court of Summit County to enjoin the operation of a skating rink on this "Public Square," and for the removal from such land of the mechanical artificial skating rink equipment and all installations in connection therewith. The petition also asks that the "Public Square" be restored to its condition prior to the building of the outdoor skating rink.

The trial court heard the case upon written stipulations of the parties; and, at the conclusion of the oral arguments of counsel, dismissed the petition. It is from the judgment dismissing the petition of the plaintiffs here that an appeal is lodged in this court on questions of law and fact.

The case is heard in this court on the written stipulations presented to the trial court, and five copies of exhibits presented to the Court of Appeals and referred to in such written stipulation. Such exhibits consist of a copy of the original plat of the town of Akron, as recorded, and copies of the deeds in reference thereto.

None of the deeds contain any specific or metes and bounds description of the areas designated on the plat as being devoted to public use. Such descriptions as are used in the deeds merely refer to the fact that an area five links square is a "Pub-

lic Square.'' There is no reversionary interest set out in any of the deeds.

In 1825, when the plat of Akron was recorded, the law of the state of Ohio required that a town map or plat be recorded, and that such maps or plats should set forth and describe all the land devoted to public use within such town. When the plat was recorded, the statute (3 Laws of Ohio, 213; also found in 22 Ohio Laws, 301) provided that the plat ''shall be deemed a sufficient conveyance to vest the fee of such parcels of lands as are therein expressed, named or intended to be for public uses in the county in which such town lies, in trust to and for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever.''

It has been determined that the act of 1805 (3 Laws of Ohio, 213; also found in 22 Ohio Laws, 301), under which the town plat of Akron was recorded, and which vested the fee of the lands devoted to public uses in the county, has been changed by the act of 1831 (29 Ohio Laws, 350), so as to vest in the later incorporated municipality the fee of such parcels of lands as are set out in the recorded plat. *Babin* v. *City of Ashland*, 160 Ohio St., 328.

In the case before us, we are interested in only one problem, which is, whether the use of the Public Square herein for recreation purposes, such as the operation of a skating rink, is such a deviation from the uses for which the land was dedicated by Samuel Perkins and Paul Williams as to warrant the interference of a court of equity. We are not now deciding any question of reversion or of a sale by the city of these lands.

Although we do not consider the question of alienation, we must realize the import of *Miller* v. *Village of Brookville*, 152 Ohio St., 217, wherein the court said:

''When a conveyance of land owned in fee simple is made to and accepted by a municipality in perpetuity for use as a park, and there is no provision for forfeiture or reversion, the entire estate of the grantor is divested, and the title of the municipality thereto is not a determinable fee but a fee simple.''

This court, in *P C K Properties, Inc.,* v. *City of Cuyahoga Falls*, 112 Ohio App., 492, made a similar pronouncement in a matter involving land given to the city of Cuyahoga Falls for a city park.

558

In the early (1853) case of *Langley* v. *Mayor and Trustees of the Town of Gallipolis, and Regnier*, 2 Ohio St., 107, at p. 110, the court, in discussing the status of streets and a public square, called in that city "La Place," said:

"* * * the use and beneficial purposes of a public square, or common, in a village or city, where no special limitation or use is prescribed by the terms of the dedication, are entirely different from those of a public highway. *Such a place*, thus dedicated to the public, may be improved and ornamented for pleasure-grounds and amusements for recreation and health; or it may be used for the public buildings, and place for the transaction of the public business of the people of the village or city, or it may be used for purposes both of pleasure and business. Any such appropriation may be made under the direction and control of the municipal authorities; but the place must, for the purpose of the dedication, remain free and common to the use of all the public. And an appropriation to the purposes of a *mere* public highway, or to the *private* and *individual* use and purposes of any lot-owner or particular class of lot-owners in the village or city, of ground dedicated as that in question, would be inconsistent with the objects of the dedication, and a plain diversion from its appropriate and legitimate uses."

It is interesting to find that, in the case of *Gleason* v. *Cleveland*, 49 Ohio St., 431 (1892), the Supreme Court of Ohio then determined that the "Public Square" in the city of Cleveland, although designated in the original town plat by the Connecticut Land Company, was not given to the city of Cleveland, but to the public generally. The state Legislature then could use a portion of that square for a monument.

In *State, ex rel. Crabbe, Atty. Genl.*, v. *Sandusky, Mansfield & Newark Rd. Co.*, 111 Ohio St., 512, the court approved the use for other purposes of land given as "open and public slips to the water from Water Street * * * and so to remain forever." This was done notwithstanding its dedication under the act of 1805 (22 Ohio Laws, 301).

"The word 'square' indicates a public use, either for purposes of a free passage, or to be ornamented and improved for grounds of pleasure, amusement, recreation, or health. That is the proper and natural meaning of the term, and its ordinary

and usual signification.'' 39 American Jurisprudence, Parks, Squares, and Playgrounds, Section 2.

Public squares, as they were used several decades ago, consisted of an open space with a bandstand where the city or village band would periodically give concerts. On this bandstand visiting dignitaries would address the public on national holidays or during political campaigns. These early views of the purpose of a public square began many years ago to yield to changing demands. The public usages and welfare of the people require different and changing concepts of the proper and beneficial purposes of a public square. In some they have disappeared in the face of the need for traffic control; in others, still retaining their public purpose, they are used to provide wholesome recreation for the people. The problem of diversion to other uses has arisen in many states.

''The term 'public square' signifies in law that certain property has been dedicated to public use. The public square of a county is of a public nature and held for governmental purposes.'' *People, ex rel. Whittock, County Treas.*, v. *Willison*, 237 Ill., 584, 86 N. E., 1094.

''The public square of a county is property of a public nature, held for governmental or public purposes.'' *Lowe* v. *Bd. of Commrs. of Howard County*, 94 Ind., 553.

In the case of *Headley* v. *City of Northfield*, 227 Minn., 458, 35 N. W. (2d), 606, the court denied the use of a public square as a high school athletic field and playground, but said, at page 463:

''The ordinary and usual signification of a public square dedicated by a private person, as here, for public use is an open tract of land for use for purposes of free passage or of ornamentation and improvement as grounds of pleasure, amusement, recreation, or health.''

''To constitute misuse or diversion, the use made of the dedicated property must be inconsistent with the purposes of the dedication or substantially interfere with it.'' 11 McQuillin, Municipal Corporations (3rd Ed.), Section 33.74, at page 775.

Thus it has been held that erecting public facilities such as a recreation building is not such a diversion as may be enjoined. *Commonwealth, ex rel. Atty. Genl.*, v. *Connellsville Borough*, 201 Pa., 154, 50 A., 825. *Town of Flagler Beach* v. *Green* (Fla.), 83

So. (2d), 598. *Roach* v. *City of Tuscumbia*, 255 Ala., 478, 52 S. (2d), 141.

3 Dillon, Municipal Corporations, Section 1097, at pages 1750 and 1751, says:

"Where *the words 'public square' are used on a plat* this is an unrestricted dedication to public use, and *the use varies* according to circumstances, to be judged of and directed by the proper local authorities or corporate guardian, subject to the control of the laws and the courts."

It is not the province of this court to discuss the wisdom of, or need for, the skating rink which the city has erected on this "public square." That matter is within the control of the executive and legislative departments of the city of Akron. Feelings and sympathies should never enter into judicial decisions.

The Supreme Court of Ohio, in *Babin* v. *City of Ashland*, 160 Ohio St., 328, reviewed the law, as it exists in Ohio, with reference to "public grounds." There seems to be no reason why the deviation herein, in view of the ruling in that case, shall be considered as beyond the authority of the city of Akron.

We determine that, under the law of Ohio, the city of Akron can devote a portion of the "public square" to the uses sought to be enjoined by this petition.

The injunction must be denied, and the petition dismissed, at the costs of the appellants.

*Injunction denied.*

STEVENS, P. J., and DOYLE, J., concur.