EDWARD F. BIGLIN AND ANTOINETTE BIGLIN, HIS WIFE, CARMELO BARAGONE AND CARMELINA BARAGONE, HIS WIFE, FRANK BARAGONA AND MARY BARAGONA, HIS WIFE, HELEN BLACKSTOCK AND JOHN J. MORRIS, PLAINTIFFS-APPELLANTS, v. TOWN OF WEST ORANGE, A MUNICIPAL CORPORATION OF NEW JERSEY, MAYOR JAMES J. SHEERAN AND THE TOWN COUNCIL OF THE TOWN OF WEST ORANGE, AND GEORGE MEHOLICK, BUSINESS ADMINISTRATOR OF THE TOWN OF WEST ORANGE, DEFENDANTS-RESPONDENTS.

THE TOWN OF WEST ORANGE, A MUNICIPAL CORPORATION, PLAINTIFF-RESPONDENT, v. WASHINGTON PLAYGROUND, A NEW JERSEY CORPORATION (NOT FOR PECUNIARY PROFIT), DEFENDANT, EDWARD F. BIGLIN AND ANTOINETTE BIGLIN, HIS WIFE, CARMELO BARAGONE AND CARMELINA BARAGONE, HIS WIFE, FRANK BARAGONA AND MARY BARAGONA, HIS WIFE, HELEN BLACKSTOCK AND JOHN J. MORRIS, APPLICANTS FOR INTERVENTION-APPELLANTS.

Argued December 6, 1965—Decided February 21, 1966.

368

*Mr. Howard F. Skarbnik* argued the cause for the plaintiffs-appellants and applicants for intervention-appellants (*Messrs. Skarbnik & Skarbnik,* attorneys).

*Mr. Kenneth R. Stein* argued the cause for the respondents (*Mr. Louis Lando,* attorney).

The opinion of the court was delivered by

PROCTOR, J. The plaintiffs appeal from a decision of the Chancery Division upholding the right of the Town of West Orange to construct a municipal swimming pool in a playground and general recreational area known as Colgate Field. The plaintiffs are homeowners in the town whose lots are situated on streets which abut the site of the proposed pool.

On March 8, 1965 the plaintiffs instituted an action in lieu of prerogative writ which named as defendants the Town of West Orange, its Mayor and its Business Administrator. On the same day the plaintiffs also applied to the Superior Court, Chancery Division, for an order enjoining these defendants from taking any action in connection with the proposed pool. Both of these complaints alleged that the building of the municipal swimming pool would violate a restrictive provision in the deed by which the town obtained Colgate Field and thus cause a reversion of the land to the grantor. The complaints also alleged that the location of a swimming pool in a residential district would not be consonant with the town's zoning ordinance. On March 19, 1965 the town instituted a condemnation suit for the purpose of acquiring any outstanding reversionary interest in Colgate Field. Thereafter the plaintiffs moved to intervene in this suit on the ground that the town lacked statutory authority to condemn land for a municipally owned swimming pool. Since the two actions instituted by the plaintiffs and their motion to intervene involved the same subject matter, they were consolidated for hearing before the Chancery Division. After considering affidavits submitted by the parties, Judge Herbert entered a summary judgment in favor of the defendants and denied

plaintiffs' motion to intervene. We certified plaintiffs' appeal on our motion prior to argument in the Appellate Division.

The following facts are undisputed. Before 1927 Colgate Field was known as Washington Playground. Title to its 7.08 acres was vested in the Oak Investment and Security Company which was owned and controlled by Richard M. Colgate. Mr. Colgate died in 1919, and in a codicil to his last will and testament he directed that the land be transferred to a non-profit corporation which was empowered to convey Washington Playground "to the Town of West Orange or to any Board of Trustees or persons who, in the judgment of the managers of said corporation may be best fitted to preserve the land for the use of a playground and as a place of recreation · for those living in the neighborhood thereof." The codicil also established a trust fund with a principal of $25,000, the income from which is used to help defray the costs of maintaining Colgate Field.

In 1921 the Oak Investment and Security Company conveyed the land to the non-profit Washington Playground Corporation, and in 1927 that corporation conveyed the land to the Town of West Orange by a deed which contained the following habendum:

"TO HAVE AND TO HOLD said premises, with the appurtenances, unto the said party of the second part [Town of West Orange], its successors and assigns, forever; SUBJECT, however, to the express condition that the premises herein described are conveyed for the use of a playground and as a place of recreation for those living in the neighborhood thereof, and in the event that said condition be violated said premises shall revert to the above-named party of the first part [Washington Playground Corporation], its successors or assigns."[1]

Shortly after taking title, the Commissioners of West Orange adopted a resolution changing the name of Washington Playground to Colgate Field.

---

[1] Washington Playground Corporation was the only named defendant in the town's action to condemn the outstanding reversionary interest in Colgate Field. This corporation did not file an answer to the condemnation complaint, and apparently its trustees do not object to the proposed municipal swimming pool.

Colgate Field is an extensively used recreational area containing facilities for baseball, basketball, handball, tennis and general play by children. It also contains a field house built in 1964 at a cost to the town of over $50,000. The playground is the site of many organized athletic activities conducted under the supervision of the West Orange Superintendent of Recreation. These activities include summer baseball and basketball leagues in which games are played daily on a fixed-schedule basis before crowds sometimes numbering 500 people. The basketball courts are lighted and many of the league games are played at night. There is an annual July 4th celebration which attracts 12,000 to 15,000 people. During the months when schools are not in session a supervised recreation program offers, among other things, arts and crafts, physical fitness classes and a variety of contests and games.

The costs of maintaining and improving Colgate Field have been borne in the greater part by the Town of West Orange. In the five-year period from 1960 through 1964 the municipality expended almost $160,000 in connection with its operation of the playground, while the income from the trust fund established by Mr. Colgate provided $4,670.

For the past several years residents of West Orange have expressed a desire for a municipal swimming pool similar to those operated in neighboring communities. The town officials agreed to construct such a facility, and after much deliberation they selected Colgate Field as the most suitable location. While the plans are not before us, defendants' affidavits show that the pool and related facilities will occupy less than one-fourth (1 2/3 of 7.08 acres) of the area of Colgate Field and that, except for the relocation of two tennis courts, there will be no curtailment of existing recreational activities. Affidavits submitted by the parties indicate that the new pool will consist of a main swimming area 165 feet in length, a diving tank and a children's wading pond. There will also be a building which will contain a dressing area, an administrative office and a snack bar. The total in-water capacity is esti-

mated to be 456 persons, and the total attendance capacity is fixed at 880 persons.

On February 16, 1965, the West Orange Town Council adopted an ordinance appropriating $495,000 and authorizing a bond issue of $471,000 for the purpose of financing the proposed pool. The town intends to charge an annual membership fee of $60 per family (the fee to be less in the case of a small family or an individual), the fees to be used for current operating expenses and for paying off the bonds. In constructing and operating the municipal swimming pool, in issuing bonds to defray the initial costs and in collecting use charges, the town is acting pursuant to authority granted by the Legislature in *N. J. S. A.* 40:61–22.21 *et seq.*

The 1927 deed contains a condition that Colgate Field be used as "a playground and as a place of recreation." Plaintiffs contend that the proposed swimming pool will violate this condition and cause the grantor's reversionary interest to become possessory. We cannot agree. To violate the terms of a dedication the use made of land must be inconsistent with the purpose of the dedication or substantially interfere with it. 11 *McQuillin, Municipal Corporations* 826 (*3d ed.* revised 1964) and cases cited in footnote 38. Colgate Field is already the site of a broad range of athletic activities. The addition of another activity, swimming, is completely consistent with, and indeed in furtherance of, the purpose for which the land was dedicated and does not violate the restrictive provision of the deed. During the warmer months swimming is a major recreational activity of millions of Americans, and West Orange, like many communities, has come to recognize the beneficial value of a swimming pool to a well-balanced municipal recreational program.[2] See *Smith v. Fuest*, 125 *Kan.* 341, 263 *P.* 1069 (*Sup. Ct.* 1928).

[2] "Swimming is an activity which appeals to people of all ages; it is an ideal form of recreation for the family and for mixed groups. Considered by many authorities as the finest all-round type of exercise, it also affords an excellent means of social activity * * *. Most studies of the popularity of different forms of recreation have indi-

We are aware that municipal swimming pools were not common when Mr. Colgate died in 1919 or when the land was conveyed to the town in 1927. However, in interpreting the scope of the deed's limitation we are not bound by the usages prevalent at the time the dedication was made. "The dedicator is presumed to have intended the property to be used by the public, within the limitations of the dedication, in such way as will be most convenient and comfortable and according to not only the proprieties and usages known at the time of the dedication, but also to those justified by lapse of time and change of conditions." 16 *Am. Jur. Dedications* § 61, *pp.* 407–408. See *Hulett v. Borough of Sea Girt,* 106 *N. J. Eq.* 118, 128 (*Ch.* 1930), affirmed 108 *N. J. Eq.* 309 (*E. & A.* 1931) ; *Halsey v. Rapid Transit Street Railway Co.,* 47 *N. J. Eq.* 380, 384 (*Ch.* 1890) ; *Morris and Essex Railroad Co. v. City of Newark,* 10 *N. J. Eq.* 352, 357 (*Ch.* 1855) ; 11 *McQuillin, supra,* at *pp.* 825–826. *Cf. Safeway Trails, Inc. v. Furman,* 41 *N. J.* 467 (1964) ; *City of Trenton v. Lenzner,* 16 *N. J.* 465, 470 (1954).

Plaintiffs rely on *Hill v. Borough of Belmar,* 3 *N. J. Misc.* 254, 127*A.* 789 (1925), in which our former Supreme Court set aside an ordinance providing for the construction of a municipal swimming pool on a small plot of land (200′ x 300′) dedicated as a "park and public square." That case, however, is readily distinguishable. The terms "playground" and "place of recreation," which limit the use of Colgate Field, connote a place devoted to athletic activities, while the words "park and public square" generally describe areas containing lawns and open spaces given to a more passive type of leisure. A swimming pool may well be out of place in a small park and public square; however, such a facility is

cated that swimming heads the list. Therefore the operation of pools and beaches has become a major phase of municipal recreation service and one which demands intelligent planning in order that the people may realize to the fullest possible extent the recreational possibilities of the water sports program." International City Managers Association, *Municipal Recreation Administration* 214 (*3d ed. Chicago* 1948).

entirely appropriate in a place like Colgate Field which was intended by the dedicator to be the site of varied athletic activities.

As part of its plan for operating the pool, the town intends to charge a fee to the users of the facility as permitted by *N. J. S. A.* 40:61–22.26. The plaintiffs argue that the deed should be interpreted to bar the imposition of monetary charges and that *N. J. S. A.* 40:61–22.26 is inapplicable because it was not enacted until 1957, many years after the dedication was completed. This contention is without merit. Deeds should not be construed to limit the grantee's use of land unless the restrictions are set forth by express terms or clear implication. *Haven Homes Inc. v. Raritan Tp.,* 19 *N. J.* 239, 246 (1955); *Riverton Country Club v. Thomas,* 141 *N. J. Eq.* 435, 440 (Ch.), affirmed 1 *N. J.* 508 (1948). There is nothing in the deed obligating the town to make all the facilities of Colgate Field available to the public free of charge. Since there is no indication to the contrary, it is reasonable to presume that the grantor intended that the town be able to use all its powers in developing Colgate Field as a "playground and as a place of recreation," including those powers granted by the Legislature subsequent to the dedication. See *Summit County Historical Society v. Akron,* 115 *Ohio App.* 555, 183 *N. E. 2d* 634 (*Ct. App.* 1961).

The plaintiffs contend that the municipal swimming pool will violate the local zoning ordinance because Colgate Field is located in an "R-T" zone which is generally residential. However, the ordinance lists "playground" as a permitted special exception use for that zone and, as discussed earlier, a swimming pool is a fully acceptable use for a playground already devoted to a wide range of athletic activities. In holding that the zoning ordinance will not be violated we are, of course, assuming that in constructing the new pool facility the town will provide adequate setbacks, buffers and parking areas, and will take all reasonable measures to protect the neighboring landowners from noise, congestion or any other adverse consequences.

As noted earlier in this opinion, the town has instituted a condemnation suit for the purpose of acquiring the outstanding reversionary interest in Colgate Field, and a motion by the plaintiffs to intervene in that suit was denied by the court below. Since we have already held that the operation of a municipal swimming pool will not violate the terms of the dedication, we assume that the condemnation action will be discontinued and that any further consideration of plaintiffs' right to intervene is unnecessary.

We have considered the other points raised by the plaintiffs and find them to be without merit.

The judgment dismissing plaintiffs' complaints and the judgment denying plaintiffs' application to intervene in the condemnation suit are affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN.—6.

*For reversal*—None.