# DANIEL J. DOYLE AND OTHERS v. CHARLES M. BABCOCK.[1]

February 20, 1931.

No. 28,284.

[1]Reported in 235 N. W. 18.

*Victor E. Anderson* and *Ernest W. Campbell,* for appellants.

*Henry N. Benson,* Attorney General, and *H. B. Sherwood,* Assistant Attorney General, for respondent.

HOLT, J.

The appeal is from an order denying plaintiffs' motion for a new trial.

The three cases were consolidated for trial. They arise out of the relocation of trunk highway No. 10 as it passes through the village of Darwin. The old highway from Dassel to Litchfield passed south of the railroad right of way and of the business part of the village of Darwin. The commissioner of highways deemed it advisable to locate the highway north of the track and appropriated

a strip of land 60 feet wide lying immediately north of and adjacent to the right of way of the Great Northern Railway Company as it passes through Darwin. The state also purchased of the railroad company the northerly 40 feet of its right of way and upon these two strips constructed the paved trunk highway No. 10, the center of the roadway being 10 feet north of and parallel to the right of way of the railroad as originally platted.

It appears that in 1869, when the predecessor in interest of the Great Northern Railway Company, the First Division of the St. Paul & Pacific Railroad Company, had constructed its track as far west as Darwin, the intention was to make that place a division point. Accordingly the railroad company acquired considerable land and, joining with two other landowners, in 1869 platted the townsite of Darwin, stating that they were the proprietors of the town of Darwin and certifying "that we had the same laid out for town purposes as hereon platted and we do hereby give the streets and alleyways as shown on this Map for the public use." The surveyor certified that the map was a correct plat of the town of Darwin as surveyed by him and that the same is located on the south half of section 23, and the north half of the northeast quarter of section 26, town 119, range 30. No monument is indicated on the plat to govern future surveys, the width of streets running east and west is not given nor of any alley. The plat covered large tracts of land. The railroad right of way crosses the southeast corner of section 23 and runs in a northwesterly direction, the right of way north of the center of the main track being 200 feet wide.

When this extensive plat of Darwin townsite was made and filed the railroad company anticipated the removal of the county seat of Meeker county from Forest City to Darwin; but Litchfield also aspired to become the county seat and won in the contest which shortly took place. The railroad company, pursuant to the threat expressed before the contest, removed the division point from Darwin to Willmar, to which point the railroad had been constructed, and the few stores and business places built on the north side of the right of way in Darwin vanished within three or four years. Some

of the buildings burned down, and others were moved away. Two or three dwellings remained or were constructed on the blocks now owned by plaintiffs adjacent to Atlantic street. Upon the plat this street, running parallel and contiguous to the northerly boundary of the right of way, is assumed to be 60 feet wide and is the land in controversy.

Plaintiffs claim title to the part of Atlantic street abutting the blocks owned by them by adverse possession and also because of abandonment of the street by the public and the revocation of the dedication by the railroad company. The actions were brought alleging title and the invasion of plaintiffs' possession by defendant and praying for an injunction. Issue was joined. By agreement with the attorney general, representing defendant, the only issue to be tried was the ownership of plaintiffs to the parts of Atlantic street in front of their premises appropriated by defendant. If that was determined in plaintiffs' favor, no injunction was to issue and the state was to proceed to condemn the land. The court found against plaintiffs on adverse possession, abandonment of the street by the public, and revocation.

Some preliminary questions must first be disposed of. Error is assigned upon the refusal of the court to submit the issue to a jury. It was discretionary with the court to call a jury to its aid. The actions were not at law. In their complaints plaintiffs allege that they had no adequate remedy at law, and unless defendant is enjoined from committing further acts of trespass and damage it will require a "multiplicity of suits," etc. and no relief other than equitable is asked. It is plain that plaintiffs could not demand a jury trial as of right.

The court found that the plat mentioned was made and filed pursuant to R. S. 1866, c. 29. Plaintiffs contended that the plat did not comply with the statute for various reasons. We have already referred to the fact that the width of many of the streets and alleys is not indicated. But there is a more serious defect in the utter failure to comply with § 3 of the chapter, which requires the proprietor to plant a stone monument from which to make surveys,

"and the point where the same may be found shall be designated on the plat." Violation of this section is made penal. There is not even a government corner located so contiguous to the corner of a platted lot that it could serve as a corner for future surveys. Following the holding in Downer v. St. P. & C. Ry. Co. 22 Minn. 251; Id. 23 Minn. 271; Village of Buffalo v. Harling, 50 Minn. 551, 52 N. W. 931, we hold that the learned trial court erred in the conclusion that the plat conformed to the statute so as to give the effect to a dedication of the street prescribed in § 5 of that chapter. The effect to be given the plat until the curative act of 1889 (c. 55) is that of a common law dedication. The curative act of 1881 (c. 57, extra session) was conditional, and there is no evidence of compliance with any condition. The point that by this plat a statutory dedication of streets and alleys cannot be considered as effected until the curative act of 1889 is to be considered with reference to the issues of adverse possession, abandonment, and revocation.

In Baker v. City of St. Paul, 8 Minn. 436, 438 (491) the court says:

"Where a party makes a statutory dedication of this nature to the public, it is exceedingly doubtful whether he can revoke it under any circumstances, except in the manner provided by statute, through the courts, and that, whether there has been any action taken upon it by the public or not. * * * This, however, is not the case with an act of private dedication, or what is termed common law dedication. Here there must be some act of acceptance on the part of the public."

And the rule is stated that until there is such acceptance there may be revocation by the dedicator. Abandonment by the public of a common law dedication of street or highway seems therefore to be more readily established than where the dedication is statutory.

With the legal propositions above stated in mind, we must examine the evidence and determine whether or not the findings challenged have sufficient support. The ones determinative of the ownership of the premises in dispute are paragraphs 7, 9, 10, 11, and 12,

which in substance find that no title was acquired by plaintiffs or their predecessors in interest by adverse possession in or to Atlantic street prior to 1899 (L. 1899, p. 65, c. 65, G. S. 1923 [2 Mason, 1927] § 9186); that the public authorities have done nothing to indicate abandonment of that street; and that the proprietors of the townsite or their successors in interest have done no act from which revocation of the easements in Atlantic street can be inferred.

So far as plaintiff McGowin is concerned, as owner of block 6, we think, the evidence is conclusive that title to the street abutting lots 1, 2, and 3 was acquired by adverse possession. The railroad company conveyed lots 1, 2, and 3 of block 6 to O. B. Knapp in 1876, and the proof is uncontradicted that soon thereafter possession was taken and Atlantic street in front used. Apple trees and other trees were planted therein and the street fenced in and used as part of the homestead. Adverse possession of Atlantic street in front of the three lots mentioned ripened into good title before the enactment of 1899 precluding occupants from acquiring title in public streets by adverse possession. Hence the finding cannot stand that plaintiff McGowin did not acquire title by adverse possession to any part of Atlantic street in front of block 6.

The findings as to the acquisition of title by adverse possession of Atlantic street abutting lots 4 to 10, inclusive, in block 6, by plaintiff McGowin, and of Atlantic street abutting the lots and block owned by the other plaintiffs, depend on whether the street in question was abandoned by the public or the dedication revoked before an acceptance by the public prior to 1889 when the plat was validated by L. 1889, p. 165, c. 55. So far as this record goes we have failed to find any title in those who executed the plat to that part of Atlantic street laid out in the north half of the southeast quarter of section 23. If that be true of course no public easement or street was created by common law or any other dedication as to that part of the street located in the north half of the southeast quarter. The part of Atlantic street referred to runs from block 6 in a southeasterly direction some 600 feet or more to block 5, the property of plaintiff Paul.

The plat not conforming to statute left the platters free to revoke a common law dedication at any time prior to 1889 unless there was an acceptance by the public. The evidence not only is uncontradicted that no public work was done on the street or upon any abutting cross street north of the track, but the railroad company, the owner of the south half of the southeast quarter of section 23 north of the track, constructed a spur track from the east into its right of way and made a gravel pit in front of the blocks now owned by plaintiff Doyle, entirely cutting off any travel on Atlantic street for a distance of some 600 feet, the depth of the excavation being from 20 to 30 feet. The excavation included part of its right of way, Atlantic street, and parts of two blocks fronting it. This was done between the years 1870 and 1887. Those who had occasion to get gravel from the pit by team drove on the railroad right of way and not on the ground designated as Atlantic street.

The abstract received in evidence as to the title of the plaintiffs Doyle and Paul, being all the property abutting Atlantic street in the south half of the southeast quarter, shows that the railroad company conveyed no part of the same prior to 1894. It was therefore free to revoke its common law dedication of the street up to at least 1889. It had not estopped itself by deeding any land abutting the street before it had entirely destroyed the possibility of the street serving as a public way by taking possession and converting it into a gravel pit. It must also be considered that the public did not accept but wholly abandoned Atlantic street as it passes through the south half of the southeast quarter of section 23, for not only has no effort been made by the public authorities to open it for travel, nor has the public ever made use of any part thereof for travel; and when in 1915 necessity arose for connection with the road which was opened on the north boundary of said south half of the southeast quarter of section 23, with the road running north and south, passing just east of the railroad depot, the public authorities obtained permission from the railroad company to construct a road for that purpose upon that part of its right of way

which adjoins Atlantic street, thus avoiding the use of that street. Not only that, but the village since its incorporation has leased from the owner of the blocks fronting the gravel pit part thereof, including Atlantic street, for a dump. There was testimony that when defendant constructed the highway through the gravel pit for a distance of some 400 feet on what is called Atlantic street it was necessary to remove the dump. All these facts, in connection with the duration of time and the change in conditions which prompted the extensive platting by the railroad company of its land, make the conclusion inescapable that the common law dedication was revoked before acceptance, that the public never accepted Atlantic street, and that by positive acts the public authorities in charge of the streets and the business of Darwin have clearly indicated a refusal to accept and there has been a complete abandonment of Atlantic street, and in fact of all streets north of railroad tracks. It may also be noted that an early hotel north of the depot was located in Atlantic street, and a tile factory encroached on the street in later years without any objection from any public authority.

As between the railroad company and plaintiffs, who claim through the grantees of the company, it is clear that since the conveyance was by lots and blocks as found on this plat, Atlantic street must be considered a street without regard to the validity of the plat. So that even though the street, because of abandonment or revocation of the dedicator, had ceased to be a public street before the conveyance, the effect of the conveyance such as the railroad company made would pass title only to the center of the abandoned street. This principle has to be kept in mind when considering adverse possession. The state has acquired 40 feet of the railroad right of way and, unless the railroad company lost title through adverse possession to the half of Atlantic street adjoining its right of way since the revocation or abandonment, the state now holds it. The record shows no title to which plaintiffs Doyle and Paul might tack adverse possession of any occupant previous to passing of title from the railway company. It deeded the blocks now owned by

plaintiff Paul in 1894 and the blocks now owned by plaintiff Doyle in 1909. The plaintiffs named trace no right to title or to possession of the property in dispute except through conveyances emanating from the railroad company. Neither plaintiff claims to have had possession in person long enough to ripen into title. So long as the title to the blocks remained in the railroad company it should be assumed that occupants thereof, if any, were there with the consent of the company; and if they occupied the abutting street, the occupancy should not be considered hostile or adverse to the company. Since the controversy was tried without considering that since these two plaintiffs claimed no independent source of title by adverse possession, the parties and the court very likely overlooked the necessity of proving adverse possession by occupants claiming under the railroad conveyances made in 1894 and 1909. That leaves it somewhat in doubt whether the railroad company has been deprived of title to the south half of Atlantic street by claimed adverse possession of plaintiffs Paul and Doyle.

In so far as hereinbefore indicated, we consider the decisive findings contrary to the evidence. We do not overlook Miss Hine's testimony, but that relates to the occupancy of only a small part of the part of Atlantic street for three or four years' time, part of plaintiff Paul's premises.

We are not disposed to regard technical objections to description by which defendant located trunk highway No. 10 through the village of Darwin. The road has been constructed and extends 50 feet on either side from the center line of the pavement as laid. Plaintiffs are not harmed or misled by any defect in the designation or location.

Numerous rulings on the admission and exclusion of evidence are challenged, but none of these require discussion for they are either such as would not cause a reversal or else are not likely to recur or cause trouble in a new trial.

The order is reversed.