CITY OF STEVENS POINT, Appellant, vs. BOCKSENBAUM, Respondent.

*April 28—July 3, 1937.*

374

For the appellant there was a brief by *Lyel N. Jenkins,* and oral argument by *Mr. Jenkins* and *Mr. R. T. Reinholdt,* both of Stevens Point.

*I. E. Goldberg* of Milwaukee, for the respondent.

WICKHEM, J. Defendant is a fruit peddler. He lives in Milwaukee, loads up a large truck with fruits and vegetables, and drives to Stevens Point, where he parks in a fixed location in a public square and stays until his truckload of produce is completely sold. He was arrested and charged with

violating a city ordinance adopted June 23, 1935. This ordinance provides as follows:

"Whereas, in the interests of public safety and welfare it is necessary that hawkers, peddlers and transient merchants using public streets, alleys and including the public square of the city of Stevens Point, Portage county, Wisconsin, be regulated in relation to use of same to prevent unreasonable use and occupancy of streets, alleys and the public square, therefore, the council of the city of Stevens Point do ordain as follows: . . .

"(2) No such hawker, peddler or transient merchant shall in carrying on his business as such, use or occupy any space in the public square of the city of Stevens Point for a consecutive period longer than fifteen minutes whether such use or occupancy be by a wagon, truck or other vehicle or by maintaining a stand or stock of goods or fixtures for use in such business.

"(3) Any such hawker, peddler or transient merchant shall be deemed to continue to consecutively occupy or use the same space in any street, alley or square unless he shall move his vehicle, stand, fixtures, stock, equipment and equipage at least thirty feet distant from such space so occupied.

"(4) The provisions of this ordinance are intended to further regulate hawkers, peddlers and transient merchants and traffic on public streets for public safety and welfare."

The reference in the ordinance to the public square requires some description of this location. The public square in the city of Stevens Point is an area of some size at the intersection of Main street with Second street. It is shown on the original plat of the city recorded in 1851. On that plat it is merely marked "public square." It is paved and presents the appearance of an unusually wide street. The dedication in the plat is general and unrestricted, and there is nothing to indicate the use of this area except its designation as a public square. For years the public square has been used by farmers and others as a marketing place. Such persons have brought loads of hay, vegetables, fruits, and other

produce, parked their teams or trucks in this area, and the public have resorted to it as they would to any public market. The pavement is marked off by the usual lines indicating where vehicles may be parked. Not only those having articles to sell have been permitted in the past to park here and to sell their wares, but the area has been used for general parking purposes. In addition to farmers, commercial peddlers, such as the defendant, bring trucks of produce and use the public square to conduct their private business. Defendant testified that he brought in a full load of produce and remained in one parking place until the truck was empty. There was some testimony that traffic hazards were created by the use of the square for these purposes for the reason that people desiring to buy stood in the vicinity of the trucks and in danger of injury from passing automobiles. It was also testified that commercial transient merchants occupy the space for long periods of time to the exclusion of the general public.

The trial court held that the ordinance as enacted was not void as based upon an improper classification, and that since this was the first and only arrest made under the ordinance, there was no room for a claim that its enforcement had been discriminatory or directed at a class, and consequently it was not within the condemnation of *Yick Wo v. Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064. The trial court held: (1) That viewed as a traffic ordinance, the enactment was wholly unreasonable and had no tendency to promote safety or the ordinary use of the streets; (2) that the common council had no power or authority to destroy the market square as a market; and (3) that regardless of its powers, the council did not intend to destroy the public square as a market, but rather to regulate its use. From these premises it was concluded that the council had no power to enact the ordinance. There is no contention made upon this appeal that the trial

court was in error in holding the ordinance free from discrimination, both in terms and in the manner of its enforcement. We shall, therefore, not examine further this aspect of the case.

In the view that the court takes of this matter, we deem it unnecessary to consider whether the trial court was correct in its conclusion that, viewed as a traffic regulation, the ordinance is wholly unreasonable. Certainly much can be said for this view. In the light of the fact that the public square is used so extensively by persons vending wares, it is diffisult to see how an ordinance compelling each vendor to move every fifteen minutes and attempt to find a new parking place at least thirty feet away from his original stand can produce anything but confusion and increased traffic hazards. However, we think the case turns upon another point. The ordinance, while it purports to regulate, constitutes an indirect and perhaps not altogether ingenuous method of prohibiting the use of the public streets and the public square for the purposes of vending by hawkers, peddlers, and transient merchants. Since defendant is plainly within this description, we see no point in considering whether farmers vending their own products are within it. As to this, see sec. 129.01 (1), Stats.; *In re Snyder,* 10 Idaho, 682, 79 Pac. 819, 68 L. R. A. 708; *State v. Hayes,* 143 La. 39, 78 So. 143; *Roy v. Schuff,* 51 La. Ann. 86, 24 So. 788; *St. Louis v. Meyer,* 185 Mo. 583, 84 S. W. 914; *Toledo v. Brown,* 14 Ohio Cir. Ct. Rep. (N. S.) 165, 169; *Commonwealth v. Gardner,* 133 Pa. 284, 18 Atl. 550, 19 Am. St. Rep. 645, 7 L. R. A. 666; *Irwin Borough v. Douglass,* 8 Pa. Dist. Rep. 505; *Lansford Borough v. Wertman,* 18 Pa. Co. Ct. Rep. 469; *Ex parte Hogg,* 70 Tex. Cr. Rep. 161, 165, 156 S. W. 931; *City of Nashville v. Hager,* 5 Tenn. Civ. App. 192; *Lehighton Borough v. Smith,* 9 Pa. Dist. Rep. 428; *South Easton Borough v. Moser,* 18 Pa. Co. Ct. Rep. 343; *Commonwealth*

*v. Hunsicker,* 14 Pa. Dist. Rep. 544; *Ibid.* 30 Pa. Co. Ct. Rep. 628.

It is clear that no effective use of the public streets and square for such purposes can be made if each vendor must interrupt his sales, reload his truck, and move within the time limited. Thus, the case involves essentially the question whether the council may prohibit the use of the streets and the public square as a market place. If it may prohibit, then what purports to be a regulation having this necessary effect is not invalid because it amounts to a prohibition, nor is it unreasonable because it accomplishes by indirection that which is within the power of the common council. The power of the council to prohibit the use of the public square for the purposes of barter and sale of merchandise seems to us to be clear. The dedication of this plot of ground as a public square was without restriction as to the type of public use to which it could be subjected. This being true, the council had a discretion as to the type of public use to which it is to be devoted. *Rhodes v. Town of Brightwood,* 145 Ind. 21, 43 N. E. 942; *Baker v. Johnson,* 21 Mich. 319, 340. It might change this use in its discretion, and we have discovered no authority to the effect that either the public or those whose private rights are involved may acquire by prescription the right to the maintenance of any particular form of public use. *Commonwealth v. Connellsville Borough,* 201 Pa. 154, 50 Atl. 825. It may prohibit the barter and sale of merchandise in a public square or upon the streets. *City of Waco v. O'Neal* (Tex. Civ. App.), 33 S. W. (2d) 205; *Ex parte Hogg, supra; City of Shreveport v. Dantes,* 118 La. 113, 42 So. 716, 8 L. R. A. (N. S.) 304; *Dent v. Oregon City,* 106 Or. 122, 211 Pac. 909. Thus, the case is in the same state as though the council has enacted a provision expressly prohibiting the use of the public streets and square by the persons described for the purposes mentioned therein.

Had the ordinance contained such a provision, there could be no objection to it upon the ground of lack of power or unreasonableness. The council may by indirection accomplish what it may do directly.

The only remaining point to be considered is that made by the trial court to the effect that it appears not to have been the purpose of the ordinance actually to prohibit, but that the ordinance is expressly regulatory and must be judged as a regulatory and not as a prohibitory measure. This matter has given us some concern, but it is our conclusion that the results of its enforcement are so plainly prohibitive that this must be considered to have been its purpose, if the council is to be credited with good faith in passing the enactment. That the ordinance might have been expressed in such a manner as to remove all doubt as to its purpose may reasonably be claimed, but, as it is drafted, the foregoing is our conclusion as to its purpose.

It follows that the ordinance, being prohibitory in purpose and effect, was within the power of the council to enact and is not subject to attack as an unreasonable exercise of the council's regulatory power over traffic.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.

NELSON, J. (*dissenting*). As I am unable to concur in the views of the court, I shall briefly state the reasons for my dissent:

The majority of the court is of the opinion that while the ordinance by its terms purports to regulate the use of the public square by peddlers, hawkers, and transient merchants, it in fact and effect indirectly prohibits the use of the public square by peddlers, hawkers, and transient merchants for marketing purposes, by making its use by them so difficult and so inconvenient as to render such use entirely imprac-

ticable. This may have been the secret and unexpressed intent of the ordinance, but such intent certainly does not appear from the language of the ordinance. In my opinion, the ordinance as framed, properly construed, is a traffic ordinance purportedly enacted in the interest of public safety, and not for the purpose of prohibiting the use of the public square as a market place. The ordinance is entitled:

"An ordinance *regulating* peddlers and transient merchants and hawkers *on the public streets* of the city of Stevens Point, Wisconsin."

The preamble recites:

"Whereas, in the interest of *public safety and welfare* it is necessary that hawkers and transient merchants *using public streets, alleys and including the public square* of the city of Stevens Point . . . be *regulated* in relation *to use of same* to prevent *unreasonable use and occupancy of streets,* alleys and the *public square. . . .*"

So far as the public square is concerned, the ordinance provides:

"No such hawker, peddler or transient merchant shall in carrying on his business as such, use or occupy any space in the public square of the city of Stevens Point for a consecutive period longer than fifteen minutes whether such use or occupancy be by a wagon, truck or other vehicle or by maintaining a stand or stock of goods or fixtures for use in such business."

Section 3 provides:

"Any such hawker, peddler or transient merchant shall be deemed to continue to consecutively occupy or use the same space, *in any street, alley or square* unless he shall move his vehicle, . . . at least thirty feet distant from such space so occupied."

Section 4 provides that the ordinance is intended to further *regulate* hawkers, peddlers, transient merchants, *and traffic on public streets for public safety and welfare.*

It is plain that hawkers, peddlers, and transient merchants are not expressly prohibited from using or occupying space on the public square, but are prohibited only from remaining in any one space for a time longer than fifteen minutes.

Viewed as a traffic ordinance, as it seems to me it should be viewed, when its terms are considered, especially in connection with the testimony of Chief of Police Resch and Peter Walraven, who was the city manager at the time of the enactment of this ordinance, it is so clearly unreasonable in its requirements as to render it void. Municipal ordinances of a regulatory nature must be reasonable and enacted in the interest of the promotion of the public health, morals, safety, and welfare. 19 R. C. L. p. 805; 43 C. J. pp. 226, 227, 228, 229. In *State v. Redmon,* 134 Wis. 89, 114, 114 N. W. 137, 143, it was said of a law, the ostensible purpose of which was to promote public health and comfort, or both, in order to be valid "must neither deal with a matter not in reason forming a proper subject for police regulation, nor deal with a proper subject therefor by means which are clearly unreasonable for the accomplishment of the purpose nor which are oppressive. *Lawton v. Steele,* 152 U. S. 133, 137, 14 Sup. Ct. 499." In *Bonnett v. Vallier,* 136 Wis. 193, 202, 116 N. W. 885, 888, it was said:

"Whether an act purporting to be within the field of police power is reasonable or not, in the ultimate, is a judicial question. There must be reasonable ground for the police interference and also the means adopted must be reasonably necessary for the accomplishment of the purpose in view."

Those cases express the settled law with respect to the condemnation that should be visited upon laws and ordinances which are clearly unreasonable.

What possible public safety purpose can be subserved by requiring a vehicle, automobile, or truck, to change its position on the public square, at least thirty feet, every fifteen minutes?

The questions, whether the ordinance as construed by the court denies to the defendant the equal protection of the laws, or whether it violates the due process clause because of an improper classification not based upon reasonable differences, germane to the public purpose of the ordinance, were not discussed or argued, because of the conclusion of the trial court that the ordinance applied equally to all using the public square for the purpose of vending products. I think the ordinance subject to attack on those grounds. *Christoph v. Chilton,* 205 Wis. 418, 237 N. W. 134.

For the reasons stated, I think the judgment of the circuit court should be affirmed.

I am authorized to state that Mr. Justice FOWLER concurs in this opinion.