## LEAL A. HEADLEY AND OTHERS v. CITY OF NORTHFIELD AND OTHERS.[1]

January 14, 1949.

No. 34,810.

[1]Reported in 35 N. W. (2d) 606.

460

*Morgan, Chase, Headley & Hoshour*, for appellants.
*Robert F. Koch*, for respondents.

PETERSON, JUSTICE.

Plaintiffs appeal from the order denying their motion for a temporary injunction to enjoin defendants from consummating the plan set forth in the verified amended complaint to convert the major portion of a public square into a high school athletic field and playground. The motion was heard on such complaint and an affidavit confirming certain allegations thereof. We shall consider the facts as therein alleged.

Two questions are raised:

(1) Whether a city may authorize the major portion of a public square dedicated for public use to be converted into part of a high school athletic field and playground and used as such; and

(2) Whether taxpayers of the city and owners of property abutting on a public square so dedicated have the right to sue to enjoin an unlawful diversion thereof from the dedicated use.

On March 7, 1856, John W. North and his wife platted land owned by North as the then town of Northfield and in the plat dedicated "the streets and public square" shown thereon "for public use." The complaint alleges that the term "public square" as used in the dedication meant an ornamental square and a square to be used and enjoyed by the public generally, and that it did not mean a square or space to be used as a school athletic field or school playground.

Following the dedication, the public square was improved with shade trees, paths, seats, a fountain, and a bandstand. It has always been used as an open park for the use and enjoyment of the public generally, and it has come to be known locally as "Central Park."

Acting under L. 1937, c. 233 (M. S. A. 471.15 to 471.19), authorizing cities, acting either independently or in coöperation with any school district or certain other public corporations, to acquire and operate certain recreational facilities, a plan was evolved during the years 1946-1948, which the city adopted, whereby more than one-half of the public square was to be converted into a high school athletic field and playground and made an integral part of the high school athletic field and playground. This was to be done by vacating a street between the high school grounds and the public square and improving the whole area, including the high school athletic field and playground, the vacated street, and the adjoining part of the public square so to be taken, as a single athletic field and playground for the high school. It was contemplated to use the same for the physical education classes and athletic exercises of the high school. On the portion of the public square so to be taken and the street to be vacated, it was proposed to install archery, softball, horseshoe, touch football, and soccer courts. Trees, walks, and other improvements thereon were to be removed as part of the conversion process.

The city let a contract to the defendant Lawrence Tuma to do certain work for the consummation of the plan, and, unless they are enjoined, defendants will proceed therewith.

Some plaintiffs are owners of property abutting on the public square, and all are taxpayers of the city of Northfield.

■ The public's rights to the public square arose by virtue of dedication by a private owner of the public square for public use. While plaintiffs apparently rely on a statutory dedication, we are unable to determine from the facts alleged by them whether the dedication was a statutory or common-law one. For present purposes, it is sufficient to point out that a statutory dedication is one by plat executed and recorded as required by statute, and a common-law dedication is one otherwise made, as by dedication in fact or by a defective statutory one. Keiter v. Berge, 219 Minn. 374, 18 N. W. (2d) 35; Doyle v. Babcock, 182 Minn. 556, 235 N. W. 18. But, in the view we take of the case at this stage, it makes no differ-

ence. The statute in force in 1856 (R. S. 1851, c. 31, § 5),[2] when the dedication here was made, provided:

"* * * and the land intended to be for the streets, alleys, ways, commons or other public uses in any town or city or addition thereto, shall be held in the corporate name thereof, *in trust* to, and for the use and purposes set forth and expressed or intended." (Italics supplied.)

At an early date our law with respect to the effect of a statutory dedication was settled. In City of Winona v. Huff (1866) 11 Minn. 75 (119), involving a statutory dedication under the quoted statute of a public square for public use by a plat executed and filed about one year prior to the instant one, we held that where the owner of land dedicates on a plat thereof a public square for public use, the dedication operates to reserve to the owner the fee to the public square and to grant to the municipality, wherein it is situated, *in trust* for the benefit of the public at large only such estate or interest therein as the purposes of the trust require. See, 44 C. J., Municipal Corporations, § 4022. In the City of Winona case and in Schurmeier v. St. P. & P. R. Co. (1865) 10 Minn. 59 (82), 88 Am. D. 59, affirmed, 74 U. S. (Wall.) 272, 19 L. ed. 74, there cited, we cited and considered territorial statutes and stated at length the reasons for so holding. In Betcher v. C. M. & St. P. Ry. Co. 110 Minn. 228, 234, 124 N. W. 1096, 1099, where we considered the respective rights of the dedicator and of the public in and to a steamboat landing or levee, we said, summarizing our prior decisions:

"* * * It has been the uniform holding of this court that the dedication of land, pursuant to this statute, to the public for streets, alleys, and public grounds, does not pass the fee-simple title thereto, but only such an estate as the purpose of the trust requires, and that

---

[2]The quoted portion of this section appears with revision of the language, but with no change of meaning, in the present statute, M. S. A. 505.01. Its history can be traced in the statutes cited in the footnote to the present section.

the fee, subject to the public easement, remains in the dedicator and his grantees. * * * It follows that the fee to the tract in question never was in the municipality, but remained in the owner of the lots abutting thereon, subject to the public easement."

A common-law dedication operates as an estoppel and not as a grant, but the effect thereof is to create only such an estate or right in the public as is necessary to enable it to enjoy the uses for which the dedication is made and to reserve the fee to the dedicator. Schurmeier v. St. P. & P. R. Co. 10 Minn. 59 (82), 88 Am. D. 59, *supra;* 2 Dunnell, Dig. §§ 2648, 2653.

It is entirely inaccurate, therefore, to speak of the public square here involved as property belonging to the city of Northfield. Rather, it should be spoken of as the property of the dedicator or his successors in interest, in which the city, as trustee for the benefit of the public and not in its own right as such, has such an interest as is necessary to enjoy the use thereof as a public square.

■ A dedication of a public square for public use is one for special, qualified, and limited purposes as such. Board of Supervisors v. City of Winchester, 84 Va. 467, 4 S. E. 844. In the City of Winona case, *supra,* we in effect so held by saying (11 Minn. 86 [136]) "that different purposes may require different interests or estates to support them"; that by the dedication of a public square "the fee remains in the owners of the land, but that such an estate or interest as the trust requires, passes to the public"; and that "a public square may be inclosed, improved, and ornamented, for grounds of pleasure and amusement, or recreation and health."

■ The ordinary and usual signification of a public square dedicated by a private person, as here, for public use is an open tract of land for use for purposes of free passage or of ornamentation and improvement as grounds of pleasure, amusement, recreation, or health. Village of Riverside v. MacLain, 210 Ill. 308, 71 N. E. 408, 66 L. R. A. 288, 102 A. S. R. 164; Rowzee v. Pierce, 75 Miss. 846, 23 So. 307, 40 L. R. A. 402, 65 A. S. R. 625; Trustees of Methodist Episcopal Church v. Hoboken, 33 N. J. L. 13, 97 Am. D. 696; Porter

v. International Bridge Co. 200 N. Y. 234, 93 N. E. 716, 21 Ann. Cas. 684; 39 Am. Jur., Parks, Squares, and Playgrounds, § 2. A distinguishing feature is, as was said in Guttery v. Glenn, 201 Ill. 275, 284, 66 N. E. 305, 308, quoting from Dillon, Municipal Corporations (2 ed.) § 509, that "the place must, for the purpose of the dedication, remain free and common to the use of all the public." The dedication here operated to pass to the public only such a public square.

In some cases like Westfall v. Hunt, 8 Ind. 174, and Commonwealth v. Bowman & Duncan, 3 Pa. 202, a public square is deemed, either by virtue of statute or local usage, to be an open place upon which a courthouse may be erected; but those cases have no application here, not only because we have here no such statutory definition or local usage, but also because there was no courthouse in Northfield at the time of the dedication, nor since. The courthouse of Rice county, wherein Northfield is situated, has always been in Faribault. The dedication was not intended as a place for the erection of a courthouse and could not have been so intended.

We need not now determine whether the fourth paragraph of the verified amended complaint, alleging that the term "public square" as used in the dedication meant an ornamental square and a square to be used and enjoyed by the public generally, and that it did not mean a square or space to be used as a school athletic field or playground, adds anything to what is implicit in the term itself; as such is a conclusion of law rather than an allegation of fact.

■ The defendant city, being a trustee for the benefit of the public of the public square, will be treated as one by holding it to the duties and the accountability of a trustee. Its duty is to devote the public square to the uses intended by the dedicator. Its accountability is for the discharge of that duty. Any use thereof by the city inconsistent with the uses intended by the dedicator constitutes a breach of trust and a violation of the statute imposing the trust in such cases. Annotations, 144 A. L. R. 488, 63 A. L. R. 485, and 18 A. L. R. 1247; 39 Am. Jur., Parks, Squares, and Playgrounds, § 21. The rule in this respect differs from what it is in

cases where the public authority acquired title to the fee, or acquired rights by exercise of the power of eminent domain, or was otherwise free from any trust. Spires v. City of Los Angeles, 150 Cal. 64, 87 P. 1026, 11 Ann. Cas. 465; Higginson v. Slattery, 212 Mass. 583, 99 N. E. 523, 42 L.R.A.(N.S.) 215; 39 Am. Jur., Parks, Squares, and Playgrounds, §§ 12, 21.

■ Use of the public square for a high school athletic field and playground would be a public use, but one not only different in kind from use as a public square, but positively inconsistent therewith and destructive thereof and consequently unlawful. The authorities hold that it is a diversion from the uses intended by the dedicator, and consequently illegal, to use a public square for purposes either of a school (McCullough v. Board of Education, 51 Cal. 418; Melin v. C. C. School District, 312 Ill. 376, 144 N. E. 13; Rowzee v. Pierce, 75 Miss. 846, 23 So. 307, 40 L. R. A. 402, 65 A. S. R. 625, *supra*), or of a playground (Beth Israel Hospital Assn. v. Moses, 275 N. Y. 209, 9 N. E. [2d] 838, affirming 250 App. Div. 591, 294 N. Y. S. 1018; McVean v. City of Elkins, 127 W. Va. 225, 32 S. E. [2d] 233). Use for high school athletic field and playground purposes here contemplates that the public square shall no longer remain free and common for use by all the public, but that it shall be occupied to the exclusion of the general public by grounds specially constructed and equipped for particular athletic and physical activities and by persons engaged thereon in them. The contemplated uses would not only render unfeasible well-recognized and customary uses of a public square such as the one made by elderly people of the benches, of that which gives children a place to romp and mothers a place to wheel their baby buggies, and others which will occur to anyone familiar with the uses of a public square, but would absolutely prevent them. We in effect recognized this to be the fact in Horn v. City of Minneapolis, 182 Minn. 172, 176, 234 N. W. 289, 291, by defining a "playground" as "a piece of park property used almost exclusively for the purpose of playground activities."

If there can be any doubt as to whether use for school purposes differs from that for a public square, it should be set at rest by

§ 125.11, which provides that in certain cases a public square may be acquired for school purposes by the exercise of the power of eminent domain. See, Oronoco School Dist. v. Town of Oronoco, 170 Minn. 49, 212 N. W. 8. Implicit in the statute is recognition not only of the difference between the uses, but also that the public trust of its estate or interest in a public square shall be maintained inviolate and that land devoted to such public use shall not be taken except in the same manner as other privately owned property and then only upon payment therefor of just compensation.

Cases holding that the power to acquire and establish parks includes the power to acquire and establish golf courses (Booth v. City of Minneapolis, 163 Minn. 223, 203 N. W. 625), and playgrounds (Horn v. City of Minneapolis, *supra*), are not contra, for the reason that the word "park" is a comprehensive one, including many sorts of grounds used for purposes of public health and recreation, such as open grounds, golf courses, playgrounds, and the like, whereas a public square is a special public ground devoted to special and limited uses such as we have defined and which exclude the others mentioned as not comprehended therein.

■ Authorization of the changed use by the city council does not make it lawful. Use of property for purposes other than those for which it was dedicated cannot be authorized by ordinance (Durkin v. City of New York, 146 App. Div. 472, 131 N. Y. S. 275; 44 C. J., Municipal Corporations, § 4022), or even by statute (City of Jacksonville v. Jacksonville Ry. Co. 67 Ill. 540; Louisville & Nashville R. Co. v. City of Cincinnati, 76 Ohio St. 481, 81 N. E. 983). Harrington v. St. Paul & Sioux City R. Co. 17 Minn. 188 (215), supports this view. We there held that an additional servitude may not be imposed on land dedicated for a particular public use. A syllabus paragraph sums up our holding as follows:

"As against the owner, neither an act of congress nor of the legislature, nor a city ordinance sanctioned by a vote of the electors, can subject the land to any additional servitude without compensation."

■ Plaintiff abutting owners have a right to maintain an action for the injunctive relief here sought. An abutting owner acquires as appurtenant to his property every easement, privilege, and advantage which the plat represents as belonging to the lots. The easements, servitudes, and uses shown thereon constitute part of the consideration for all conveyances made according to the plat. Consequently, an abutting owner may maintain an action in his own name to enforce the rights belonging to him as such in a public square shown on a plat which includes his property. Kray v. Muggli, 84 Minn. 90, 86 N. W. 882, 1102, 87 A. S. R. 332, 54 L. R. A. 473; Flaten v. City of Moorhead, 51 Minn. 518, 53 N. W. 807, 19 L. R. A. 195; Beth Israel Hospital Assn. v. Moses, 275 N. Y. 209, 9 N. E. (2d) 838, affirming 250 App. Div. 591, 294 N. Y. S. 1018, *supra;* Rowzee v. Pierce, 75 Miss. 846, 23 So. 307, 40 L. R. A. 402, 65 A. S. R. 625, *supra;* 16 Am. Jur., Dedication, § 57.

■ We do not deem it necessary to decide now whether plaintiff taxpayers also have a right to maintain this action. If plaintiff taxpayers have no right to maintain this action for the injunctive relief here sought, the consequence of their joinder would be simply a misjoinder of parties plaintiff. Such a misjoinder would not be fatal to the right of the plaintiff abutting owners to proceed. Where one or more plaintiffs have the right to maintain the action, misjoinder, if any, of other plaintiffs lacking such right is a mere irregularity which can be corrected at any time. Wiesner v. Young, 50 Minn. 21, 52 N. W. 390; 5 Dunnell, Dig. § 7326. See, State & R. R. & W. H. Comm. v. R. I. M. T. Co. 209 Minn. 105, 112, 295 N. W. 519, 524.

■ Since the facts establish plaintiff abutting owners' right and threatened violation thereof to their irreparable injury, a temporary injunction should have been issued as a matter of course, and it was a clear abuse of discretion to refuse to grant one. Flaten v. City of Moorhead, *supra.*

Reversed with directions to grant plaintiffs' motion for a temporary injunction.