# GEORGE ALLEN, SR. v. VILLAGE OF SAVAGE.

112 N. W. (2d) 807.

December 15, 1961—No. 38,208.

*Julius A. Coller II,* for appellant.
*Daniel John O'Connell,* for respondent.

Knutson, Justice.

This is an appeal from an order denying plaintiff's motion for judgment on the pleadings and from an order granting defendant's motion to dismiss the cause of action.

The action originally was brought by George Allen, Sr., in his individual capacity, and George Allen Garage, Inc., a corporation, to enjoin the village of Savage from using, for a municipal liquor store, a portion of a parcel of land claimed to have been dedicated to the village for public purposes. At the close of the case, defendant's motion to dismiss the case as against plaintiff corporation on the ground that it had never authorized the individual plaintiff to commence the suit in its behalf was granted, and no appeal has been taken from that order. It follows that the corporation is now out of the case and no longer interested therein. Reference herein to plaintiff will mean only George Allen, Sr., individually unless otherwise noted.

Most of the governing facts have been stipulated by the parties. It appears that in 1858 there was filed with the Register of Deeds of Scott County a plat of what was then known as the village of Hamilton. It has later become the village of Savage. Blocks on the plat were numbered in the usual fashion, and on the plat appears a square tract of land designated as "Public Square." The streets and alleys laid out on the plat were dedicated to the public use, but the dedication does not include the public square. The dedication reads:

"We, John Kearney, Rosannah Kearney, and John B. Fish and Nancy A. Fish, do hereby certify that the annexed plan of Hamilton is correct, and that we authorized Francis McNamara to survey and plan the same, and do hereby release all right, title and interest in and to the streets and alleys, and give the same for public use."

The stipulation of facts provides:

"* * * that the block referred to in item one of the stipulation [that designated as 'Public Square'] has been put to various public uses since the time of the dedication, and that various buildings have been erected, occupied and used on portions of the premises since approximately the 1880's, and that these buildings include a municipal

or village hall, municipal or village fire barns, municipal or village jail, a municipal liquor store, municipal council chambers, municipal clerk's offices, storage rooms, et cetera.

\* \* \* \* \*

"That in addition to the buildings mentioned, it is further stipulated that the Square has been put to use as for public parking, portions have been rented at times, some of the buildings mentioned have been razed and new buildings erected, one in particular, housing the municipal liquor store erected about 1939 or '40, which building contained in a portion thereof storage space for fire vehicles or fire equipment, municipal liquor store, municipal council chambers, clerk's offices, municipal storage space."

A portion of the funds derived from the operation of the municipal liquor store has been pledged to the extent of $2,500 yearly for the retirement of sewer and water bonds by an election of the people of the village in 1946. This action was approved by the state legislature. L. 1947, c. 137. The operation of the municipal liquor store has been profitable, and it was stipulated that approximately 80 percent of the cost of all village operations was paid from the profits of the liquor store.

The so-called public square has been the source of much litigation. In 1927, in an action brought against the village by an heir of one of the original platters, it was determined that the land was a public square. In 1939, Eli Kearney, one of the heirs of a dedicator, brought an action claiming title superior to that of the village. This action was dismissed without trial and without prejudice to either party. In that action, the plaintiff in the suit now before us interposed an answer denying title in Eli Kearney. In 1945, plaintiff obtained a quitclaim deed from Eli Kearney, the successor to the original dedicator, to all that portion of the so-called public square except a 100-foot square corner on which the liquor store involved herein is now located. In 1956, plaintiff obtained judgment registering the title to this property in himself. In a subsequent action brought by the village, this judgment was set aside on the ground that it had been fraudulently obtained,

and we affirmed. Village of Savage v. Allen, 255 Minn. 73, 95 N. W. (2d) 418. That action is still pending in the court below.

Plaintiff was a member of the village council of the village of Savage almost continuously between 1924 and 1942. As such, he took part in the establishment of the municipal liquor store, making motions for the selection of an architect on September 6, 1938; for approval of plans on September 5, 1939; and for payment for material used in construction. While he was not acting as a member of the council, he accepted payment for insurance premiums on the building. Prior to the commencement of this action on April 16, 1959, plaintiff did nothing to stop the construction of the building or the use thereof for a municipal liquor store. It was stipulated that he had knowledge of the fact that the building was being remodeled and enlarged at a cost of more than $185,000.

At the time plaintiff obtained a quitclaim deed from Eli Kearney to whatever rights he had in the property, plaintiff had full knowledge of the fact that a liquor store was being operated on a part of the property at the time.

Some years ago a part of the so-called public square was acquired by the State Highway Department and is now occupied by a part of a state highway.

George Allen Garage, Inc., owns lots across the street from the so-called public square. Aside from the interest that plaintiff has in the square itself, he has no adjacent property.

While plaintiff does not question the right of the village to use the property for municipal buildings, he contends that use of it for a municipal liquor store is illegal.

The trial court based its decision on the grounds of estoppel and laches. Defendant contends that plaintiff has no right to maintain the action. Plaintiff contends that the court erred in dismissing the action and that the court erroneously failed to make findings of fact, conclusions of law, and order for judgment.

■ Under the law we follow, the municipality holds title to dedicated land in trust for the public for the uses for which it was dedicated. City of Winona v. Huff, 11 Minn. 75 (119). As such, the dedicator and his successors in interest have a right to sue to restrain the munic-

ipality from diverting the property to a use inconsistent with that for which it was dedicated.[1]

In this case, plaintiff does not claim to be the owner of a reversionary interest in the 100-foot square on which the liquor store is located. He does claim to be the owner of at least a reversionary interest in the balance of the designated square. In Headley v. City of Northfield, 227 Minn. 458, 35 N. W. (2d) 606, we held that the owner of property adjacent to a public square had a sufficient interest to maintain a suit to enjoin diversion to a use not contemplated by the dedication. It would seem that here, too, the dedicator or his successors in interest, having a reversionary interest in at least a part of the dedicated tract adjacent to that portion which is claimed to be diverted, have a sufficient interest to challenge the diversion from the use inconsistent with the dedication.

■ At the outset, it may be said that failure to include the land designated as a public square on the plat within the dedicatory language of the plat prevents establishment of a statutory dedication. Doyle v. Babcock, 182 Minn. 556, 235 N. W. 18; Keiter v. Berge, 219 Minn. 374, 18 N. W. (2d) 35; Headley v. City of Northfield, 227 Minn. 458, 35 N. W. (2d) 606. Dedication must therefore rest upon a common-law dedication.

■ A common-law dedication rests on an estoppel rather than upon a grant.[2]

In Wilder v. City of St. Paul, 12 Minn. 116 at 123 (192 at 200), we said:

"* * * To constitute a valid common-law dedication there must be an intention to dedicate and an act of dedication on the part of the land-owner and an acceptance on the part of the public. [Citing cases.] This general rule should perhaps be stated with the qualification that if the owner of the servient estate intentionally or *by gross negli-*

---

[1] 11 McQuillin, Municipal Corporations (3 ed.) § 33.71.

[2] Schurmeier v. St. P. & P. R. Co. 10 Minn. 59 (82), 88 Am. D. 59, affirmed, 74 U. S. (Wall.) 272, 19 L. ed. 74; Village of Mankato v. Willard, 13 Minn. 1 (13); Village of Mankato v. Meagher, 17 Minn. 243 (265); Headley v. City of Northfield, 227 Minn. 458, 35 N. W. (2d) 606.

*gence* leads the public to believe that he has dedicated the premises to public use he will be estopped from contradicting his representations *to the prejudice of those whom he may have misled*. Indeed, the rule as to dedication, at common law, is but an application of the doctrine of *estoppel in pais*. A dedication to public use does not operate as a grant, but as an *estoppel in pais* of the owner of the servient estate from asserting a right of possession inconsistent with the uses and purposes for which the dedication was made."

■ It follows that in order that there be a common-law dedication it must appear either expressly or by implication that there was an intention to dedicate, followed by an acceptance of the property by the public, which may be either express or implied from use.[3]

■ Long acquiescence in the use of property by the public may establish an intent to dedicate and an acceptance by the public, as well as the use for which the property is dedicated. In Dickinson v. Ruble, 211 Minn. 373, 375, 1 N. W. (2d) 373, 374, we said:

"* * * From the fact that for more than 15 years prior to the time of plaintiff's ownership the use had been 'open,' it may be inferred that the public had used the alleyway in a manner that was manifest, obvious, observable, and unmistakable. If the use was of this character for that length of time, it is reasonable to conclude either that it was known to the prior owner, which was a bank in Willmar, or, if not, the owner was negligent in not knowing and cannot be relieved from its ignorance. * * * Under our decisions, only 'long-continued, uninterrupted use by the public' (Klenk v. Town of Walnut Lake, 51 Minn. 381, 385, 53 N. W. 703, 704) need be proved to establish the owner's acquiescence from which the intention to dedicate is inferred."[4]

■ Where the purpose for which the dedication is made is restricted,

---

[3]Wilder v. City of St. Paul, 12 Minn. 116 (192).

[4]See, also, Metalak v. Rasmussen, 184 Minn. 260, 238 N. W. 478; Morse v. Zeize, 34 Minn. 35, 24 N. W. 287; Klenk v. Town of Walnut Lake, 51 Minn. 381, 53 N. W. 703; Boye v. City of Albert Lea, 93 Minn. 121, 100 N. W. 642; Carpenter v. Gantzer, 164 Minn. 105, 204 N. W. 550; Keiter v. Berge, 219 Minn. 374, 18 N. W. (2d) 35.

the dedicated property must be used for the purpose for which it was dedicated. It cannot be used for a purpose inconsistent with the intention of the dedicator.[5] In statutory dedications the purpose for which the dedication is made is most frequently expressed in an instrument of one kind or another. However, in dealing with a common-law dedication, the intention of the dedicator must often be ascertained from his conduct and from the use to which the property is put over a period of time by the public to whom it is dedicated. In situations of this kind, the use and a long acquiescence in such use by those who have a right to complain are of transcendent importance in determining the intention of the dedicator. Long acquiescence of the dedicator and his successors in interest often becomes the most important evidence available in establishing the purposes for which the dedication was made, and the dedicator and his successors in interest will be estopped from denying an intent to dedicate for that use[6] if they acquiesce therein for such a period of time that it becomes inequitable to prohibit such use.

While most common-law dedications involve use of the property for highways and streets, the same rule is applicable in cases involving the use of property such as we have here. The same rule of estoppel also applies to an abutting owner who has a right to contest a use considered inconsistent with the intent of the dedicator. Where he acquiesces in such use for such a period of time that it would be inequitable to require a municipality to discontinue such use, the complaining party who had the opportunity of challenging the deviation from the originally intended use will be estopped from doing so.[7]

---

[5]Headley v. City of Northfield, 227 Minn. 458, 35 N. W. (2d) 606.

[6]See, Diamond Match Co. v. Savercool, 218 Cal. 665, 24 P. (2d) 783; Town of Ruston v. Adams, 9 La. App. 618, 121 So. 661; Oak Hill Country Club v. Town of Pittsford, 264 N. Y. 133, 190 N. E. 321; Gardner v. Hope, 248 Ky. 270, 58 S. W. (2d) 353; Johnson v. Ferguson, 329 Mo. 363, 44 S. W. (2d) 650; State v. Frank W. Coy Real Estate Co. 44 R. I. 357, 117 A. 432; Pittsburgh, C. C. & St. L. Ry. Co. v. Noftsger, 26 Ind. App. 614, 60 N. E. 372.

[7]Premium Oil Co. v. Cedar City, 112 Utah 324, 187 P. (2d) 199. See, 11 McQuillin, Municipal Corporations (3 ed.) § 33.63; Kirchen v. Remenga, 291 Mich. 94, 288 N. W. 344.

In Headley v. City of Northfield, 227 Minn. 458, 35 N. W. (2d) 606, we had occasion to consider the uses to which land designated in a plat as a public square could be put. We there held that use of the square for a high school athletic field was inconsistent with the purpose for which the dedication was made and therefore unlawful. The case is distinguishable from the one now before us on several grounds. In the Headley case, the dedication of the public square is found in the dedicatory language of the plat itself.[8] The evidence showed that the square had been used for a public park from its original dedication. In the case now before us, the public square designated on the plat is excluded from the language dedicating streets and alleys to the public use. Here, the property has been put to a variety of uses almost from the beginning. Public buildings of one kind or another have been located on part of the property over a great many years, and neither the dedicator, his successors, nor anyone else has challenged such use, at least until the first action was brought by an heir of some of the original platters in 1927. Plaintiff actually took an active part in the establishment of the building in which the liquor store is now being operated and management of other buildings used for public purposes over a great many years.

Use of a public square, as such, for public buildings is not unknown and has been upheld in many cases. In Bruker v. Carlisle Borough, 376 Pa. 330, 336, 102 A. (2d) 418, 421, the facts are somewhat similar to those now before us. The court there said:

"* * * Nor can it be denied that, where such a dedication has been established and the public has accepted it, there cannot be any diversion of such use from a public to a private purpose, and it is also true that, where a dedication is for a limited or restricted use, any

---

[8]The plat in the Headley case contains this language:

"On this 28 day of February, 1856, personally appeared before me John W. North and Ann L. North, his wife, the proprietors of the within named Town of Northfield, and severally acknowledged they had caused to be made the within survey and plot of said town; that the streets and public square designated on said plot are given for public use; * * * ." See Record, p. 5, Headley v. City of Northfield, *supra*.

diversion therefrom to some purpose other than the one designated is likewise forbidden: * * *.

"* * * It * * * appears that no specific uses of the Square have been invariably followed; thus, a town hall and fire house was erected about 1820 in the southwest quarter and was used for municipal purposes until destroyed by fire in 1845, and, as already stated, the Council Chamber and certain Borough offices were installed in the market house erected in 1878. We must conclude, therefore, that, while undoubtedly this Center Square cannot be used for other than public purposes, any particular uses within that limitation were neither commanded nor restricted. * * *."

In Schien v. City of Virden, 5 Ill. (2d) 494, 497, 126 N. E. (2d) 201, 203, the land involved was designated on the plat as "Public Ground." With respect to its use for other than park purposes, the court said:

"It seems evident from the evidence that the city authorities have in the past utilized this property for whatever city or public use they deemed advisable and the public has acquiesced in that use. Use of the property for the erection of a city hall, its use for offices, the city jail, housing fire engines and a garage and workshop are all uses inconsistent with and violative of a dedication for park purposes.

\* \* \* \* \*

"In the instant case the identical dedication as 'public ground' and the public acquiescence in the use of the ground for the necessary town and city buildings are sufficient to consider it a dedication for such purposes. A building to house fire-fighting equipment would be a necessary public building, the property has in fact been used for that purpose, and if the city council determined that such building was a proper public use, it would be consistent with this dedication."[9]

In Mahon v. Luzerne County, 197 Pa. 1, 16, 46 A. 894, the court said:

"* * * The title to spaces left open by the original plans of towns

---

[9]See, also, City of Stevens Point v. Bocksenbaum, 225 Wis. 373, 274 N. W. 505.

or by subsequent general dedication for similar purposes is in the commonwealth for the benefit of the whole public, and the uniform course of decision has been that central squares in the laying out of towns were meant as much, perhaps primarily more, for public buildings than to secure space, and therefore the commonwealth may authorize their occupation in that manner without altering their original use."[10]

Here, again, however, the inquiry is essentially one of determining the intent of the dedicator. In that determination, the long acquiescence of the dedicator and the public in the type of use to which the property is put should be controlling.

■ Thus, while authorities may be found to support a variety of views, we think that the weight of authority supports the following rules: Where property is dedicated to public use, the intent of the dedicator as to the use to which it may be put controls; where such intent is clearly expressed and is specific and restricted, no deviation from the use so expressed may be permitted; but where the intention of the dedicator must be determined from the acts and conduct of the parties, or the dedication is in general, unrestricted terms, both the intended use and acceptance may be shown by the manner in which the property is used. Where there has been long acquiescence by the dedicator and his successors in interest and the public in the use of the property, both the dedicator and his successors in interest, as well as others who have a right to object to such use, will be estopped from asserting that such use is a deviation from the use intended by the dedicator.

Decision in this case is placed upon an estoppel of plaintiff both as a former member of the village council and as a citizen. He now occupies the position of a successor in interest of the original dedicator of this land. Whether the trial court correctly based the estoppel on acts which plaintiff himself had done or on some other theory, we think that the result was correct. Both as the holder of the reversionary interest in adjacent land and as a member of the public who had long acquiesced in use of this property for erecting and maintaining buildings to be used for a municipal purpose, he should not now be heard

---

[10]See, 11 McQuillin, Municipal Corporations (3 ed.) § 3374.

to complain that it is an improper use under the dedication we have in this case.

■ Where property is dedicated to the public for use without restriction or where the dedication contemplates use for public buildings without restriction as to the type of buildings, it must follow that the property so dedicated may be used for any building used in the exercise of a proper governmental function.

■ The operation of a municipal liquor dispensary is now clearly authorized and recognized by the statutes of this state as a legitimate function of government.

In Stabs v. City of Tower, 229 Minn. 552, 559, 40 N. W. (2d) 362, 368, we said:

"Publicly owned liquor dispensaries, including municipal liquor stores, are established pursuant to statutory authorization. The statutory authorization operates as a grant of whatever permission is required to establish such stores. * * * Publicly owned liquor establishments are governmental agencies established in the exercise of the police power to accomplish governmental purposes."

The constitutionality of Minn. St. 340.07, subd. 5, and 340.11, subd. 10, authorizing the establishment of municipal liquor stores in certain cities, villages, and boroughs, was upheld in Arens v. Village of Rogers, 240 Minn. 386, 61 N. W. (2d) 508, appeal dismissed, 347 U. S. 949, 74 S. Ct. 680, 98 L. ed. 1096.

Inasmuch as the establishment and operation of a municipal liquor dispensary is a proper governmental function, it could be located on any land dedicated for use as a site for public buildings unless the dedication expressly excluded such type of use.

■ Plaintiff complains of the court's failure to make findings of fact, conclusions of law, and order for judgment. Rule 52.01 of Rules of Civil Procedure provides in part:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * *. Requests for findings are not necessary for purposes of review."

We agree with plaintiff that Rule 52.01 contemplates that the trial court shall make findings of fact and conclusions of law upon which its order for judgment is based. In this case, the court's decision is based in all essential matters on facts stipulated by the parties. There are no conflicts in the evidence to be resolved by the court in findings of fact. The basis of the court's decision is stated in its memorandum. While it would have been more in harmony with Rule 52.01 if the court had made findings of fact, conclusions of law, and order for judgment, nothing could be now accomplished by reversing the case in order that the trial court may be required to do so. Plaintiff made no application in the court below for such findings. Under the rule he is not required to do so.

In Asch v. Housing and Redevelopment Authority, 256 Minn. 146, 155, 97 N. W. (2d) 656, 664, we said:

"* * * Clearly, findings by the trial court were mandatory. With reference to Rule 52(a) of Federal Rules of Civil Procedure, which is identical to the applicable provisions of Rule 52.01 of Minnesota Rules of Civil Procedure, it is stated that the purpose of the rule is to aid the appellate court by affording it a clear understanding of the ground or basis of the decision, and that the findings of the trial court are not jurisdictional and the absence of findings may be disregarded by the appellate court if the record is so clear that the court does not need their aid. * * *

"We believe that the findings of the trial court are sufficient, in view of the completeness of the record here to reflect the basis of the trial court's decision, and further findings are not necessary as an aid to this court in rendering its opinion."

While we do not condone the practice of ignoring the mandatory requirements of Rule 52.01, we believe that no good could be accomplished by remanding this case to the trial court for the purpose of finding facts which are stipulated. Where the evidence is conflicting or different inferences are permissible from the evidence, findings of fact and conclusions of law are essential. Where, as here, there is no conflict in the evidence and only one inference is permissible from it, and the basis of the court's decision clearly appears from the record,

we need not reverse in order to permit the trial court to perform its function as long as doing so would be of no aid to us in arriving at a proper decision.

Affirmed.