(838 P.2d 361)
No. 67,599

WAGON WHEEL LANDOWNERS ASSOCIATION, INC., A Kansas Corporation, and a Class of Plaintiffs, *Appellants*, v. STEPHEN A. WALLACE and LAWANA S. WESBROOKS, *Appellees.*

Opinion filed September 4, 1992.

*David C. All,* of Augusta, for appellants.

*Richard V. Foote* and *Yvette Leerskov Gardner,* of Matlack & Foote, of Wichita, for appellees.

Before BRISCOE, C.J., ELLIOTT and PIERRON, JJ.

PIERRON, J.: The Wagon Wheel Landowners Association, Inc., appeals from the district court's judgment denying the Association's petition to set aside a deed conveying real property to Stephen A. and LaWana S. Wesbrooks Wallace.

The Wallaces purchased property in the Wagon Wheel Ranch subdivision in May of 1985. The property purchased by the couple constituted an unplatted area of land within the subdivision. The Wallaces filed a warranty deed recording their purchase with the Butler County Register of Deeds.

Wagon Wheel Ranch offered its residents a number of amenities. The subdivision featured a clubhouse, a swimming pool, tennis courts, and a stable. A stream ran through the subdivision, and a number of unplatted areas existed which were used by the residents.

The Wallaces moved into the existing home on their newly acquired property and began making various improvements. When the Wallaces fenced in a portion of their land, horseback

riders living in the subdivision found their access to some of the unplatted areas restricted. A dispute developed between the Wallaces and the Wagon Wheel Landowners Association. The Association filed a petition in district court in November of 1989, claiming that the Wallaces had purchased a "common area" of Wagon Wheel Ranch without obtaining the required consent of all landowners within the subdivision. The Association requested that the court set aside the deed to the property purchased by the Wallaces. The Wallaces filed a counterclaim to quiet title which the court allowed to be filed as a class action against all owners of land in Wagon Wheel Ranch included in a numbered lot.

At the bench trial, the evidence produced indicated that a plat of Wagon Wheel Ranch was approved by the board of county commissioners and filed by Wagon Wheel Ranch, Inc., in 1962. E.G. Stolz, the president of Wagon Wheel Ranch, Inc., filed an affidavit with the register of deeds in which he stated that the corporation never intended "to dedicate any portion of lands or property included in said Wagon Wheel Ranch for public use, and that the plat as recorded . . . does not dedicate any lands or property therein included for public use or make reference to any dedication." The somewhat strangely worded affidavit further stated that the plat was filed with the board of county commissioners upon condition that

" '. . . if same is approved, no portion of the property contained therein marked as roadways, streets, or parking areas, or any area "other than numbered lots which are reserved for private sale, shall be dedicated to the public but shall be reserved for the use, benefit and enjoyment of the members and guests of Wagon Wheel Ranch, Inc., and same shall be maintained at the expense of Wagon Wheel Ranch, Inc." ' "

Stolz' affidavit did not define the phrase "members and guests." C.W. Klein, a cabin owner and member of Wagon Wheel Ranch, Inc., since 1962, testified that members and guests included cabinowners and persons to whom Stolz granted temporary licenses to use the Wagon Wheel Ranch, Inc. facilities. Stolz indicated in the affidavit that he filed the plat so that it would be a matter of public record that "no property, roadway, park, or any other property included in the said platted area, was or has been dedicated to the public, and further that the roadways and streets

are to be maintained at the expense of Wagon Wheel Ranch, Inc."

Lynn Stolz lived in what was to become the Wallaces' home until 1975, when Wagon Wheel Ranch, Inc., deeded a portion of the property on which the home stood to Harold and Hazel Pease.

On September 10, 1976, the Peases deeded the property conveyed to them by the 1975 deed to Wagon Wheel Ranch, Inc. The corporation in turn conveyed an area of land to the Peases which included all the property at issue in this lawsuit. The Wagon Wheel Landowners Association incorporated in 1978. In 1979, Wagon Wheel Ranch, Inc., and the Peases as grantors conveyed an area of land by general warranty deed to the Association. The land at issue here was specifically excepted from that conveyance. In 1982, the Association executed a deed purporting to convey the land in question to the Peases.

In 1982, the Peases conveyed the southern portion of the property at issue to Thomas and Patricia Calderara. In 1985, the Peases executed a warranty deed which conveyed the remainder of the property at issue to the Calderaras. Although not expressly stated in the record, it appears the Calderaras divorced and Thomas assumed sole ownership of the property. On May 28, 1985, warranty deeds from the Peases to Thomas Calderara were filed with a corrected legal description of the property. Calderara thereafter conveyed the property to the Wallaces.

The Wallaces purchased a title insurance policy for their land from a licensed abstracter. The abstracter's title search indicated that the couple's title to the land was complete and perfect. From 1985 to 1991, the Wallaces invested approximately $60,000 in the property in the form of improvements, taxes, and mortgage payments.

The Association's lawsuit against the Wallaces was not the first dispute involving the Wagon Wheel Ranch subdivision to be litigated. In 1973, Wagon Wheel Ranch resident Richard Adelson filed a suit to set aside the sale of an unplatted area of the subdivision by Wagon Wheel Ranch, Inc. The suit also sought an injunction to prevent the corporation from selling unplatted land in the future. The district court dismissed the case with prejudice in June of 1974 after the parties resolved their dispute.

On March 20, 1986, the Wagon Wheel Landowners Association filed suit against Sam L. Rose to permanently enjoin him from constructing a mobile home site on the "common areas" of Wagon Wheel Ranch. The case was heard before the same judge who presided over the trial between the Association and the Wallaces. The court granted an injunction in the suit against Rose, concluding that the language in the E.G. Stolz affidavit constituted a dedication of the unplatted land in the subdivision and served as public notice to Rose of the dedication.

After the close of this trial, the district court filed a memorandum opinion in which it entered a judgment for the Wallaces. The court renounced its prior decision in the 1986 lawsuit filed against Sam Rose, concluding as a matter of law that the affidavit of E.G. Stolz did not create a dedication of the unplatted areas of Wagon Wheel Ranch. The court concluded that the recorded plat of Wagon Wheel Ranch did not create a dedication or any ownership interest to the owners of the platted lots with respect to the unplatted areas in the subdivision. The court found that the "members and guests of Wagon Wheel Ranch, Inc.," who were mentioned in paragraph four of E.G. Stolz' affidavit had no more than a temporary license or permit to use the facilities in the subdivision. The court further concluded that, because the lawsuit filed in 1973 by Richard Adelson was settled in favor of the free alienation of the subdivision's unplatted areas, res judicata barred the current claim against the Wallaces. Finally, the court concluded that because the Association and Wagon Wheel Ranch, Inc., each conveyed the land at issue to the Wallaces' predecessor in title, the Association was estopped from bringing the current action before the court.

The Association timely appeals the judgment of the district court.

The key issue in this case is whether the trial court was correct in concluding that the unplatted areas within the Wagon Wheel Ranch subdivision were freely alienable and not dedicated for the use of landowners within the subdivision. We believe it was and affirm.

The Association contends that, contrary to the district court's conclusion, lot owners in Wagon Wheel Ranch possessed an ir-

revocable right to use and enjoy the unplatted areas in the subdivision.

The Association, in reliance upon the plat of Wagon Wheel Ranch and the affidavit of E.G. Stolz, asserts that there was a dedication of the unplatted land in Wagon Wheel Ranch for the use, benefit, and enjoyment of the lot owners in the subdivision. A dedication is an offer by the owner of land to devote the property to *public use*, manifesting an intention that the land shall be accepted and used presently or in the future. The owner's intent to dedicate and the public's acceptance thereof are essential elements of a complete dedication. *Moore v. City of Lawrence*, 232 Kan. 353, 358, 654 P.2d 445 (1982). Dedication may be by statute or common law. See *Cooper v. City of Great Bend*, 200 Kan. 590, 438 P.2d 102 (1968).

The Association has failed to include a copy of the Wagon Wheel plat in the record on appeal. The affidavit of E.G. Stolz indicates that *no* portion of Wagon Wheel Ranch was intended to be dedicated for *public* use. Given this fact, any attempt to dedicate the unplatted areas in the subdivision for the use of members and guests of Wagon Wheel Ranch, Inc., must fail. *Moore* clearly states that a dedication must be for a public use. 232 Kan. at 358. There appear to be no Kansas cases addressing the issue of what constitutes public use for purposes of a dedication. Other jurisdictions clearly indicate, however, that any attempt to dedicate land to a group encompassing less than the general public will fail. *Mingledorff v. Crum*, 388 So. 2d 632, 634-35 (Fla. Dist. App. 1980); *Marksbury v. State*, 322 N.W.2d 281, 285 (Iowa 1982); *Marks v. Bettendorf's, Inc.*, 337 S.W.2d 585, 593 (Mo. 1960); *Anderson v. Felten*, 96 Nev. 537, 540, 612 P.2d 216 (1980). See 23 Am. Jur. 2d, Dedication § 5.

As was set out in *Marksbury v. State*, 322 N.W.2d at 285, an essential element in establishing an express dedication is the appropriation of the land by the owner for a public use. Dedication for public use shall be for the use of the public at large, that is, the general unorganized public, and not for one person or a limited number of persons, or for the exclusive use of restricted groups of individuals.

In *Knudsen v. Patton*, 26 Wash. App. 134, 611 P.2d 1354 (1980), the Washington Court of Appeals settled a dispute similar

to the one before this court. Defendant Patton purchased property and platted it into three different sections. The recorded plat of one of the sections contained the word "park" in an area outside of the platted lots. Patton informed prospective purchasers of the lots that the subdivision would contain a private park available for the use of the residents in the subdivision. Patton subsequently developed and sold the property which he had previously represented would be used for the park.

Plaintiffs brought an action against Patton, alleging that the defendant made a common-law dedication of the property as a park. The appellate court upheld the trial court's conclusion that no dedication had taken place. The court noted that, in order to prevail on a theory of common-law dedication, plaintiffs would have to clearly establish that the landowner intended to dedicate land to the use of the general public. Because the evidence indicated that Patton intended to open up the disputed property only to residents of the subdivision, the court concluded that no dedication could exist. When the requirements for a valid dedication as set forth in *Moore* are considered in light of *Knudsen*, it appears that the district court correctly concluded that no dedication occurred in this case.

The Association argues that, regardless of whether a formal dedication occurs, when a private individual purchases a lot with reference to a plat or map containing streets, roadways, parks, and the like, the purchaser gains certain rights in the continued existence of such areas. The Association relies upon *Kasper v. Miller*, 159 Kan. 488, 156 P.2d 550 (1945), as support for this assertion. In *Kasper*, the court upheld an injunction preventing the construction of buildings in a park within a residential area. The park was never formally dedicated for public use. However, purchasers of lots in the vicinity of the park relied on representations that the area would always remain a park. The City of Kansas City, Kansas, used the money of taxpayers to maintain and improve the area as a park. In addition, the area had been used as a park for more than 15 years. The court found that these facts established dedication by estoppel.

The Association's reliance on *Kasper* is misplaced. The park at issue in *Kasper* was explicitly found to be "a permanent beauty spot or park for the benefit of the *public*." (Emphasis added.)

159 Kan. at 499. In addition, public money was used to maintain the area. In contrast, the affidavit of E.G. Stolz makes clear that the unplatted areas of Wagon Wheel Ranch were to be privately maintained and used only by members and guests of Wagon Wheel Ranch, Inc.

The Association asserts that, regardless of whether Stolz dedicated the unplatted areas of Wagon Wheel Ranch to public use, the fact that Stolz deeded lots to purchasers with reference to a plat vests certain rights in those purchasers in the unplatted areas of the subdivision. Three cases cited by the Association are especially pertinent: *Tuccio v. Lincoln Development Corporation*, 27 Conn. Supp. 373, 239 A.2d 69 (1967); *McCorquodale v. Keyton*, 63 So. 2d 906 (Fla. 1953); and *Ute Park Summer Homes Ass'n v. Maxwell Land Gr. Co.*, 77 N.M. 730, 427 P.2d 249 (1967). See Annot., 7 A.L.R.2d 607. The court in *Tuccio* held that a developer who filed a plat containing 141 lots and a designated community recreation area could not subsequently sell that area free and clear. 27 Conn. Supp. at 378. The court in *Ute Park* held that a developer who prepared a plat with lots and an open area labeled as a golf course was not entitled to summary judgment where lot owners sought to enjoin the sale of the area without restrictions as to its use. 77 N.M. at 733-34. In *McCorquodale*, the court held that a developer of a recorded plat containing an area designated as an oceanside park could be enjoined from selling the land for use other than as a park. 63 So. 2d at 911. The rationale expressed by the *Ute Park* court adequately explains the underlying reasoning in each of the three decisions:

"[A] grantor, who induces purchasers, by use of a plat, to believe that streets, squares, courts, parks, or other open areas shown on the plat will be kept open for their use and benefit, and the purchasers have acted upon such inducement, is required by common honesty to do that which he represented he would do. It is the use made of the plat in inducing the purchasers, which gives rise to the legally enforceable right in the individual purchasers, and such is not dependent upon a dedication to public use, or upon the filing or recording of the plat." 77 N.M. at 735.

At trial, three different residents of Wagon Wheel Ranch testified that they purchased lots in the subdivision in part because they believed the pool, clubhouse, stable, tennis courts, and

unplatted areas would be available for them to use. Unlike the lot owners in the aforementioned cases, however, there is no indication that the Wagon Wheel Ranch residents relied upon anything in the actual plat of the subdivision as the basis for their belief. The plat itself has not been included in the record on appeal, although it is included as an appendix to the Association's brief. There is no evidence that any of the deeds of the Wagon Wheel Ranch lot owners referred in any way to the unplatted areas of the subdivision. There is evidence that Lynn Stolz charged at least one resident of the subdivision for using the stable. Stolz and Harold Pease leased unplatted areas of the subdivision to groups and individuals who were from outside Wagon Wheel Ranch. Wagon Wheel Ranch residents were precluded from having access to property being used by outside groups.

Based on the evidence presented at trial, the court concluded that paragraph four of E.G. Stolz' affidavit bestowed no more than a license or permit upon the members and guests of Wagon Wheel Ranch, Inc. The evidence supporting the court's finding is substantial competent evidence. "Where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law." *Gillespie v. Seymour,* 250 Kan. 123, Syl. ¶ 1, 823 P.2d 782 (1991). See also *Altman v. Quattlebaum,* 253 Ga. 341, 320 S.E.2d 179 (1984) (subdivision lot owners acquired no right to use property designated as a recreational center in a subdivision plat where [1] no lot owner complained of having to pay a user fee; [2] no lot owner was excluded from the land while it was used by the YMCA or when it was subsequently closed to all uses; and [3] there were no deed covenants, plat restrictions, or property association agreements in reference to the property).

The residents of Wagon Wheel Ranch have no permanent right to use the land on which the Wallaces reside.

Due to our ruling on the issue of dedication, we need not address the other issues presented by the appellees in support of the court's ruling.

Affirmed.