William L. Frost Manhattan City Attorney 323 Poyntz Avenue, Suite 204 Manhattan, Kansas 66502-6003
Dear Mr. Frost:
You request our opinion regarding the use of a city building located on property that was dedicated as a public square in 1857. Specifically, you inquire whether the City may allow private non-profit organizations the use of such building to house the organizations' offices and provide services to a portion of the public.
You indicate that in 1857 a square block within the City was dedicated on the original city plat as a "public square." For more than fifty years the property has housed the Riley County Police Department and the jail. However, a new facility is being constructed elsewhere and soon the current building will be vacant. Some private non-profit organizations have expressed interest in using the building which prompts your inquiry on the authorized uses of a public square.
A dedication is an offer by a landowner to devote property to a public use.[1] A designation of a parcel of land as a "square" is sufficient to indicate an intention to dedicate the land to public use.[2] K.S.A. 12-401 et seq. establish the procedure for dedicating land for public purposes. One of the requirements is that the plat set forth "all the parcels of ground . . . reserved for public purposes."[3] K.S.A. 12-406
provides in part:
 "Such maps and plats of such cities . . . shall be a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named or intended for public uses in the city, in trust and for the uses therein named, expressed or intended, and for no other purpose."[4]
(Emphasis added.)
Land may be dedicated for any use which the general public can enjoy. It may not be used for private purposes or uses that are public in nature but the enjoyment of which is restricted to a limited part of the public.[5] In Wagon Wheel LandownersAss'n v. Wallace,[6] the Court concluded that dedication for public use is "for the use of the public at large, that is the general unorganized public, and not for one person or a limited number of persons, or for the exclusive use of restricted groups of individuals."[7] [This "public use" doctrine which is associated with the dedication of property should not be confused with the "public purpose" doctrine which provides that a municipality may appropriate public money to private individuals as long as the appropriation is for a public purpose and promotes the public welfare.[8]]
Cases from other jurisdictions that have considered specific uses for public squares hold that the use must be for the general public rather than for selected members.[9]
 "[The] use and beneficial purposes of a public square . . . where no special limitation or use is prescribed by the terms of the dedication are entirely different from those of a highway. Such a place, thus dedicated to the public, may be improved and ornamented for pleasure grounds and amusements for recreation and health; or it may be used for the public buildings, and place for the transaction of the public business of the people of the . . . city or it may be used for purposes both of pleasure and business. Any such appropriation may be made, under the direction and control of the municipal authorities; but the place must . . . remain free and common to the use of all the public. And an appropriation to the purposes of . . . private and individual use and purposes of any lot-owner or particular class of lot-owners in the . . . city, of ground dedicated [to the public] would be inconsistent with the objects of the dedication, and a plain diversion from its appropriate and legitimate uses."[10]
In Headley v. City of Northfield,[11] the Court opined that a portion of land dedicated as a public square which had been used as a city park for many years could not be used for a high school athletic field:
 "[Use] for a high school athletic field . . . contemplates that the public square shall no longer remain free and common for use by all the public but that it shall be occupied to the exclusion of the general public by grounds specifically constructed . . . for particular athletic and physical activities by persons engaged thereon in them."
While there are no Kansas appellate cases that address the issue of allowing property dedicated as a public square to be used by a private organization, the lesson from the Wagon Wheel Landowners
case and cases from other jurisdictions is that the property must be available for enjoyment by the general public. There may be instances where a private non-profit organization desires to use a public building located on a public square in such a manner that its use is for the general public rather than for the organization's members or some other restricted group of individuals. However, given the facts stated in your letter that certain private non-profit organizations would like to use the city building to house their offices and provide services to onlysome members of the general public, it is our opinion that such use would not be for the public at large which would preclude the organization's use of a building located on property that was specifically dedicated as a public square.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] Wagon Wheel Landowners Assn. v. Wallace,17 Kan. App. 2d 395 (1992).
[2] Daughters v. Board of Riley County Com'rs, 81 Kan. 548
(1910).
[3] K.S.A. 12-401.
[4] See also K.S.A. 12-406a.
[5] 26 C.J.S. Dedication § 8; 23 Am.Jur.2d Dedication § 5; McQuillan, Municipal Corporations, § 33.08 (3rd ed. 1991).
[6] 17 Kan. App. 2d 395.
[7] See id. at 399.
[8] Duckworth v. City of Kansas City, 243 Kan. 386 (1988).
[9] McKernon v. City of Reno, 357 P.2d 597 (Nevada 1961) (tourist information booth); Allen v. Village of Savage,112 N.W.2d 807 (Minn. 1961) (municipal liquor store); Summit CountyHistorical Society v. City of Akron, 183 N.E.2d 634 (Ohio 1961) (public ice skating rink); Roach v. City of Tuscumbia,52 So.2d 141 (Ala. 1950) (public tennis courts).
[10] 183 N.E.2d at 636.
[11] 35 N.W.3d 606 (Minn. 1949).